ATLANTIC COAST LINE RAILROAD
COMPANY, Appellant,

v.

Wylie L. FLOYD, Appellee.

No. 7076.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 21, 1955.

Decided Dec. 8, 1955.

Douglas McKay and Julius W. McKay, Columbia, S. C. (E. Ellison Walker, and McKay, McKay, Black & Walker, Columbia, S. C., on the brief), for appellant.

Thomas J. Lewis, Jr., Atlanta, Ga., and R. K. Wise, Columbia, S. C. (Thomas J. Lewis and Lewis & Lewis, Atlanta, Ga., on the brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and BRYAN, District Judge.

DOBIE, Circuit Judge.

Wylie L. Floyd (hereinafter called Floyd) instituted against Atlantic Coast Line Railroad Company (hereinafter called Atlantic), a civil action in the United States District Court for the Eastern District of South Carolina.

Floyd's complaint charged under its first count that the injuries resulted proximately from Atlantic's violation of the Federal Safety Appliance Act and under its second count from negligence under the Federal Employers' Liability Act. Atlantic pleaded a general denial to both counts of the Complaint and also contributory negligence and willfulness on the part of Floyd. The case was tried before the United States District Judge, and a jury. On the issues submitted, the jury found no violation of the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., but negligence under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and damages of $48,500.00. Motions for Direction of Verdict, for Judgment *Non Obstante Veredicto*, and in the alterna-

tive for a new trial were duly made. The Court heard the last two motions together and overruled the motion for a judgment n. o. v. but granted a new trial unless Floyd should remit the sum of $12,500.00 from the verdict rendered. In due course Floyd remitted $12,500.00 from the verdict and Atlantic has appealed to us from the resulting judgment of $36,000.00.

Floyd, a switchman for Atlantic, about 2:30 A.M. on December 14, 1953, was engaged in shifting freight cars in the railroad yards at Florence, South Carolina. A cut of about 25 cars was being moved from one place known as the new or big yard to the local yards where they were to be allocated to trains according to respective destinations. The weather was bad and intermittent heavy showers of rain would occur. Floyd and Bell, the conductor of the switching crew, worked together, starting from the head car in the string and proceeding to the rear. Bell was on the left side of the track, Floyd on the right. The cars were each marked for destination and Floyd would call to the conductor opposite the respective markings which the conductor would note on his work book. In addition it was Floyd's duty to inspect each car to determine whether the respective brakes were off so that the movement could go forward in due course.

After the first stop of the train, Floyd states that he walked forward on the right side of the train, and claims he heard some noise or squeak that might indicate "a brake dragging * * * a hand brake." Thinking he had located the origin of the noise he got on the train two car lengths from the rear to cross between a box car and a gondola to test the brakes on the box car, and to loosen them if on. The brake mechanism was on the left rear of the box car and the same was true of the gondola car. His lantern disclosed the top of the buffer plate on the front of the gondola was broken out, so instead of stepping there as he said he might have done he stepped along the corrugated edge of the gondola and by holding to the top of that car

safely crossed to the left side where he saw and felt the brake mechanism was properly loose.

Floyd states that he then decided to test the brakes on the left rear of the gondola and started back to cross between the cars to the right side in order to get on the ground and then cross between the rear of the gondola and the car behind it to inspect the gondola brake. It was raining heavily and his story is that as he was recrossing from left to right with his right foot on the corrugated end of the gondola the train came to a sudden stop, the jar of which caused his foot to slip into the path of the coupler mechanism between the coupler horn and the striking plate where it was crushed when the slack between the box car and the gondola was taken up by the stopping of the engine. His foot was fastened until the engine started forward again and the foot was released and Floyd fell from between the cars to the right of the track, where his cries summoned to his assistance Conductor Bell. Floyd's right foot had to be amputated just in front of the ankle joint.

■ The only contention that we need consider is whether there was sufficient evidence to justify the submission to the jury of the question of the negligence of Atlantic as a contributory cause to Floyd's injuries. Atlantic strenuously insists that this question must be answered in the negative and that Atlantic was entitled to a directed verdict in its favor. Since we think there was substantial evidence that made this issue a jury question, the judgment of the District Court must be affirmed.

Floyd testified in no uncertain terms that "the whole top of it (the buffer plate) was rotted out or broke out and gone, and that is usually where we put our feet to cross on;" that "part of it (the buffer plate) was busted clean open;" that the buffer plate "usually has a solid piece across the top." He further stated that this buffer plate on the gondola car was not in normal condition but that there was a hole in the buffer plate

and that a strap iron was welded or bolted to the buffer plate which was also bent.

■ Bell, the conductor with whom Floyd was working, corroborated Floyd's testimony as to defects in the buffer plate. Bell testified: "The top of this buffer casting had sometime before * * * broken out * * * there were no signs of any fresh broken metal there." And he stated that the piece of strap iron which had been bolted or welded to the buffer plate was bent back toward the car. Further corroboration was found in the testimony of Lewis, the footboard man on the train crew: "The top part of the buffer plate * * * was gone. It was busted out and gone."

■ Floyd's testimony as to the propriety of his actions and method of conduct when he thought he heard the sound of a dragging brake was also corroborated by other witnesses. Conflicting evidence on this point was offered by Atlantic, which also contended that the accident could not have happened in the way outlined by Floyd and his witnesses. This conflicting testimony presented a question of the credibility of witnesses, which is, of course, for the jury, which resolved this and the other vital questions in this case in favor of Floyd. With these findings of the jury, we cannot interfere.

The Supreme Court has made crystal clear its manifest unwillingness to sanction the taking of cases under the Federal Employers' Liability Act away from the jury by directed verdicts in favor of defendant-railroads. Some of the more important cases are collected and briefly summarized in the opinion of Circuit Judge Johnsen in Louisville & Nashville Railroad Co. v. Botts, 8 Cir., 173 F.2d 164, 167:

"The opinions of the Supreme Court have declared that it is 'the clear Congressional intent that, to the maximum extent proper, questions in actions arising under the Act should be left to the jury,' Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 68, 63 S.Ct. 444, 451, footnote 30, 87 L.Ed. 610, 143 A.L.R. 967; that such cases may not be taken from the jury merely because the question of liability is 'close or doubtful,' Bailey v. Central Vermont Ry., 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444; that the jury has the right to make 'all reasonably possible inferences' from such probative facts in the evidence as it chooses to accept, and 'It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences,' Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 32–35, 64 S.Ct. 409, 411, 412, 88 L.Ed. 520; that in any choice between possible inference 'a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference,' but 'Only when there is a complete absence of probative facts to support the conclusion reached does reversible error appear,' Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916; and that the assumption that, on an issue of liability, 'juries will invariably decide * * * against railroads' is 'contrary to fact,' and courts may not act on the theory that 'juries will fall short of a fair performance of their constitutional function,' but they must assume that a jury 'finds facts only because they are proved,' Wilkerson v. McCarthy, [336 U.S. 53] 69 S.Ct. 413, 417, 418 [93 L.Ed. 497]."

The judgment of the District Court is affirmed.

Affirmed.