Mildred E. SHEPARD, as Administratrix
of the Estate of Byron C. Shepard,
Jr., deceased, Plaintiff-Appellee,

v.

The NEW YORK, NEW HAVEN &
HARTFORD RAILROAD COM-
PANY, Defendant-Appellant.

No. 165, Docket 27140.

United States Court of Appeals
Second Circuit.

Argued Jan. 4, 1962.

Decided Feb. 14, 1962.

William A. Blank, Brooklyn, N. Y.
(Arthur O. Maharay, Jr., Newburgh,
N. Y., on the brief) (John D. Calamari,
Martin Fogelman, New York City, of
counsel), for plaintiff-appellee.

R. M. Peet, New York City (Edmund
J. Moore, New York City, on the brief),
for defendant-appellant.

Before WATERMAN, KAUFMAN and
MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

Defendant appeals from a judgment in
favor of plaintiff in an action under the
Federal Employers' Liability Act, 45
U.S.C.A. § 51 et seq. The first trial, in
April, 1961, was terminated when the
jury failed to agree. Judgment was for
plaintiff in the second trial before Judge
McGohey and a jury in June, 1961.

Harry Richard Hender, employed by
defendant as a conductor, was confined to
a Connecticut state mental institution on
March 22, 1957, where he remained until
July 10, 1957. Prior to that time, he
had had a record of irrational and vio-
lent behavior on the job. While in the
mental institution, his condition was di-
agnosed as a schizophrenic reaction, para-
noid type. He was given tranquilizers
for four weeks and then placed on group
psychotherapy. He was placid and never
violent during confinement. He did suf-
fer from delusions that the doctor and
his wife were going to poison him, that
his fellow workers wanted him to lose
his job and wanted "to get" him and that
his fellow Masons wanted to get rid of
him. Dr. Prins, of the state mental hos-
pital, realized Hender's chance of recov-
ery was extremely tenuous but believed
there was a possibility of sealing over
his delusions. On July 10, 1957 Hender
was permitted to return home on the

understanding he was still a patient of the institution, should continue taking thorazine, and was to report back at periodic intervals.

On July 29, 1957, Hender was examined on behalf of defendant by Dr. Ralph Jenkins, a urologist in private practice, who made physical examinations for defendant. Dr. Jenkins noted Hender had been confined to a mental institution and requested a diagnosis and opinion from the institution. He received a letter from the superintendent stating that Hender was much improved and that "it would be beneficial for him to resume his work as a train conductor." Hender was reemployed on July 31, 1957. Thereafter, Hender began telling fellow employees and others that people were trying to kill him with pills and that he was going to harm certain people. He also stated that the decedent Shepard, and one Cosier, were out to get him and to blackball him from the Masons. Numerous other statements and threats appear in the record. At least three such incidents, indicating Hender's propensity to do violence to fellow employees, were reported to supervisory personnel of defendant. Defendant, however, took no action.

On October 31, 1957 Mrs. Hender called the state hospital, informing them her husband was sick again. She was told to send him back. On November 5, 1957 Hender called Shepard and asked him to stop tormenting him. Mrs. Hender called the state hospital to send an ambulance for her husband, but when Hender heard of this, he threatened her with a butcher knife, and she called off the ambulance. Hender then left home and purchased a shotgun and shells. In the meantime, Mrs. Hender made three calls to the local police at East Haven and was told by them to warn Shepard. She did so.

At approximately 5:15 P.M. on the same day, Shepard was in the lead engine and Engineer Cosier was in the rear engine of four diesel engines coupled together in the Cedar Hill Yards. Hender boarded the diesels, killed Shepard

and wounded Cosier with the shotgun. At this time Hender was not on duty and had not worked for two days prior to that time. Hender returned to his automobile, drove off and later gave himself up to the police.

Defendant recognizes the general rules as to the duty of the railroad to furnish a reasonably safe place to work and to take reasonable precautions to protect employees against foreseeable injury. Defendant asserts, however, "that no reasonable man could have found that defendant breached its duty to decedent." We do not agree.

■ Most of the defendant's argument and citations support the common law theory of negligence and absence of negligence. On the other hand, this, an FELA case, is "significantly different from the ordinary common-law negligence action. * * *" Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 509–510, 77 S.Ct. 443, 450, 1 L.Ed.2d 493 (1957). In Rogers, Mr. Justice Brennan recognized the rule in FELA cases as: "Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death." 352 U.S. at pages 506–507, 77 S.Ct. at page 448. See also Fritts v. Toledo Terminal R. R. Co., 293 F.2d 361, 362 (6 Cir. 1961) ("* * * the question for this court is whether there was a complete lack of probative facts. * * *") and Sinkler v. Missouri Pac. R. Co., 356 U.S. 326, 329, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958) ("This statute [is] an avowed departure from the rules of the common law. * * *")

■ We believe Hender's record prior to his stay at the mental institution, his rehiring without a fully adequate report from the hospital, and defendant's failure to act when his conduct after reemployment was reported were matters for the consideration of the jury. We cannot say, in light of the sweeping precedents

in this field, the jury could not conclude defendant's act of rehiring and subsequent failure to act upon notice of Hender's conduct negligently caused Shepard's death. We find no merit in defendant's other contentions.

Affirmed.