**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD CO., Appellant,**

v.

**Charles MELCHER, Appellee.**

**No. 17140.**

United States Court of Appeals Eighth Circuit.

July 10, 1964.

Edward C. Stringer, St. Paul, Minn., made argument for appellant and filed brief with Arthur J. Donnelly and Philip Stringer, St. Paul, Minn.

Carl L. Yaeger, Jr., Minneapolis, Minn., made argument for appellee and filed brief with Allen McCarthy, Minneapolis, Minn.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and MATTHES, Circuit Judges.

JOHNSEN, Chief Judge.

Reversal is sought of a judgment under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for $39,000, on contentions (1) that there was no negligence on the part of the railroad as a matter of law; (2) that there was not established such connection between the injuries claimed and the accident involved as to entitle the question of their proximateness to be left to the jury; and (3) that the court engaged in an improper exercise of its power of judgment and discretion on whether a new trial should be granted for excessiveness of verdict, in that it rested its denial of such a motion by appellant on erroneous grounds. Each of these contentions was the subject of such assertion below as to be available here.

The aspects and incidents, as set out herein, are what the jury properly could find the facts to have been and what we here must regard it as having done.

The accident occurred on a commuter train of appellant running out of Chicago to Blue Island and beyond, on a cold, snowy March day. Appellee's status was that of head brakeman on the train, but because of its commuter nature, his duties consisted principally of collecting fares and assisting passengers in the first two coaches of the six-car train. The cars were special equipment for commuter service, having four automatic

doors, two on each side, to facilitate boarding and unboarding and to avoid hindrance and delay from location of station platforms.

When the train took off from the Chicago (LaSalle Street) station on its run, appellee immediately commenced his collection of fares in the first car. Within a few minutes a passenger reported to him that one of the doors in the second car was standing open. He went back to try to close it. The doors of a train are opened at the station when it becomes subject to boarding. This can be done automatically as to all of the cars by means of a master valve which can be operated at either end of the train. The doors are similarly subject to general closing, and it is the conductor's duty to "throw" the master valve when the train leaves the station.

Each car, however, has a local valve by which its doors can, when necessary, be made to open or close without relation to the rest of the train. When appellee got back to the second car, he made application of the local valve, but this was without any effect upon the door. He then sent a passenger after the conductor.

The doors slide into cabinets along the walls in opening and back out of the cabinets as they close. They have a rubber flange on their outer edge and this flange extended out of the cabinet on the open door. The conductor and appellee both engaged in pulling on the flange, but they were not able to make the door respond. Appellee also had leaned down and cleaned out with his fingers the snow, ice and mud in the exposed portion of the track or slot through which the bottom part of the door was supposed to glide. This similarly, however, neither alone nor in conjunction with the pulling on the flange, produced any result. The conductor then opened up the back of the cabinet so that he could get his foot in to push against the edge of the door while appellee pulled on the flange with both hands.

In the course of these joint efforts, appellee experienced a sudden bolt of pain, like "a firecracker exploding", which coursed through his right shoulder and arm. He continued working on the door, however, until finally, through the conductor's foot-pushing and appellee's flange-pulling, they managed to get it closed. At the time that the condition of the door was brought to appellee's attention, the train was passing 22nd Street, and it was not until it had reached 78th Street, with several intermediate station stops between, that the efforts to close the door succeeded.

While it was not unusual in the winter months for the track or slot of some door to become clogged with snow and ice during the course of a train's run, the situation here was not that of a train out on its run, but of one starting on a run, with inspection of its equipment being supposed to be made before it went out, by carmen located in the station. As an incident of this task, one of the carmen "must report to the conductor that the train is all right to go".

On appellant's first contention—that there was no negligence on its part as a matter of law—it is argued that there was no proof of any mechanical defect which would cause the door to remain open; that the only thing therefore to which the failure of the door to close could be attributed was the accumulation of snow, ice, and mud in the track from the snowy weather; that such injury as appellee may have sustained thus was the result purely of climatic conditions; that appellant could not have a responsibility for this natural cause; and that it accordingly was required to be held that appellant was without legal fault in the situation.

As above indicated, there was evidence that the door failed to respond to appellee's attempted removal of the snow and ice from its track, or to the flange-pulling efforts of the conductor and appellee after such removal. A pushing of the door on its inner side, together with a pulling on the flange of its outer edge, was necessary to get it moved out of its cabinet into the track. Appellee further testified that difficulties as to opening

and closing were of general occurrence with the type of door involved, and that he had had occasion to report such incidents "at least a couple of times a week as long as I have been on the job", including one on the train on which he was working the day before the accident.

From this, it would seem possible for the jury rationally to infer that failure of the door to operate could have involved something more than the accumulation of snow and ice in the track. But the jury may perhaps have regarded the snow and freezing conditions as alone being responsible for the failure of the door to operate. Even on this basis, however, appellant would not, as it contends, be entitled to have it held that there could not exist any fault upon its part as a matter of law. The train was permitted to start out on its run with one of its doors not in closing order when, as the jury could properly conclude, with steps of inspection and correction properly taken by the carmen at the Chicago station, in their responsibility to see "that the train is all right to go", this would not and should not have occurred.

As the conductor, a witness for appellant, admitted, the doors "are supposed to be closed when we leave Chicago". This should have been able to be done automatically as the train left the station. If a door would not so operate, no matter what the cause might be, the carmen had a responsibility, the same as for anything else that was not in working order, to correct the condition or to have the car removed from the track. Detection was a simple matter, since all that it was necessary to do in ascertaining whether the doors would close was to throw the general control valve.

There was nothing to suggest that the carmen had made any inspection or tests at all of the doors of the train. Also, the jury could rationally regard such accumulation of snow, ice and mud as there was in the door track as having apparently occurred precedingly and elsewhere, since the train in its starting status was standing in the shed of the station and not in the open. The duty of the carmen to inspect was, on appellee's evidence, one which was to be performed during the time that the train was located in the station.

Thus the jury could properly find that the situation was one of breach of duty and fault with which appellant was chargeable, and that this had played a causal part in the accident involved, in that, except therefor, appellee would not have had to engage in the efforts to get the door closed at the time and his injury would not have occurred.

Appellant was accordingly not entitled to have it held that there was not and could not be any negligence on its part as a matter of law. The situation seems so clear in this respect that it is perhaps unnecessary to remind of the approach which must be engaged in as to Federal Employers' Liability Act cases. Under the Act, the right of the jury to pass upon the question of fault and causality must be most liberally viewed. And for purposes of its right to pass on these elements, the jury's power to engage in inferences must be recognized as being significantly broader than in common law negligence actions. Henwood v. Coburn, 8 Cir., 165 F.2d 418; Chicago & Northwestern Railway Co. v. Green, 8 Cir., 164 F.2d 55; Shepard v. New York N. H. & H. R. Co., 2 Cir., 300 F.2d 129. The scope of that power extends materially beyond the traditional concept of speculation applied in common law actions. In the liberality entitled to be exercised as to probative relevance and required to be recognized as to inferences thereon, it is only necessary that the jury's conclusion be one which is not outside the possibility of reason on the facts and circumstances shown.

In the language of the Supreme Court, "Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death". Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 506–507, 77

**1000**

S.Ct. 443, 448–449, 1 L.Ed.2d 493; Inman v. Baltimore & Ohio R. Co., 361 U.S. 138, 140, 80 S.Ct. 242, 243, 4 L.Ed. 2d 198. "The decisions of this Court * * * teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury". 352 U.S. at 510, 77 S.Ct. at 450–451.

Appellant urges, however, as its second contention, that even though fault and causality could be found to exist against it as to the occurrence of the accident, there was not established such connection between the injuries and disability claimed and the accident which occurred as to entitle the question of proximateness to be left to the jury on this aspect. It is pointed out that the only medical expert who was interrogated specifically as to such proximateness did not testify that the accident caused appellee's present condition, but merely stated that "it could well cause it".

■ Testimony of a medical expert that an act could have caused a certain result, though competent to be admitted, has generally been held not to afford a sufficient probative basis, standing alone, for a conclusion by the jury that the act did cause the result. Massachusetts Protective Ass'n v. Mouber, 8 Cir., 110 F.2d 203, 206; Bearman v. Prudential Ins. Co. of America, 10 Cir., 186 F.2d 662, 665; Saaf v. Duluth Police Pension Relief Ass'n, 240 Minn. 60, 59 N.W.2d 883, 886–887. If expert testimony is depended upon alone to establish causal connection, the witness must go further than merely to state that the act could, and must indicate the opinion that it did, cause the condition claimed to exist. Cf. Chicago, Great Western Ry. Co. v. Smith, 8 Cir., 228 F.2d 180, 182–183. However, as observed in Saaf, supra, 59 N.W.2d at 886, such an opinion is not required to be expressed as one of convictional certainty in general, but only as one of persuaded probability on the elements of the particular situation.

This rule need not be further discussed, however, either generally or as related to a Federal Employers' Liability Act case, for it is in any event not controlling of the situation here. Other probative elements were contained in the evidence so that the question of causal connection was not one which had to be resolved merely upon the opinion testimony referred to.

Appellee testified to the descriptive facts of how the accident occurred and what had been the location and character of the manifestations experienced by him. Medical opinion would not be required to make it possible for a jury to recognize the fact that something happened to his arm and shoulder from his efforts to close the door. Equally clear, within everyday reality, would it be competent for a jury to say, from the history which he detailed of the pain and difficulty experienced and of its continuation down to the trial two years later, that whatever his condition could be shown to be in this respect, it was attributable to the accident.

The history which he detailed showed that he had gone to see his family doctor about the pain in his arm and shoulder that evening when he finished work; that he consulted various other doctors continuously thereafter when the condition failed to improve; that he underwent four surgical operations by appellant's and his own doctors in their attempts to provide him with relief from the pain and difficulty of which he complained; that he layed off from work intermittently after the accident and for increasing periods as time went on because, as he claimed, he was unable to endure the pain to which the tasks of his job subjected him; and that he finally gave up his job for this reason.

He showed that he had had no such condition or difficulty in his arm prior to the accident. There was nothing to suggest any other source or basis for the condition than the shoulder-pulling incident which he said happened, and as to whose occurrence the jury could find corroboration in his reporting of it im-

mediately, his seeking medical help that evening, and his undergoing of repeated injection treatments and surgical operations for the purpose of obtaining relief from the pain. Again, the condition claimed by him at the trial was not as to some other part of the body than that which had been immediately involved in the accident. Nor did he make claim of injury of a different character to the arm and shoulder than that which was given manifestation by him at the time of and immediately following the accident.

■ It will be noted that appellant's contention is as to the jury's lack of right to find causal connection for such conditon as was existing at the time of the trial, and when appellee's evidence showed the history of its manifestation and continuance from the time of the accident down to that time. We do not believe that it is necessary to say any more in answer to this contention. This, however, is of course not the same question as whether the existing condition could properly be found to be permanent in nature. The medical opinion as to the possibility of causation referred to above did not have relationship to the question of permanency of the injury. On that aspect, there was positive medical testimony showing that appellee would not again have an arm of normal strength and function and that he would continue to experience pain in it.

■ Appellant's final contention, as has been previously indicated, is that the trial court did not engage in responsible exercise of its power of judgment and discretion on whether there was such excessiveness of verdict that a new trial should be granted. It is argued that the court did not give consideration to the amount of the verdict, but brushed off the question with a statement that "The Court of Appeals for our Circuit has at no time granted new trials on claims of excessiveness in damages".

Our decisions have repeatedly emphasized the responsibility which rests on the trial court as to the question of excessiveness of verdict. Some of these expressions are collated in Solomon Dehydrating Co. v. Guyton, 8 Cir., 294 F.2d 439, 446–448, and the responsibility has since been re-emphasized in National Food Stores, Inc. v. Utley, 8 Cir., 303 F.2d 284, 287, and Bankers Life & Casualty Co. v. Kirtley, 8 Cir., 307 F.2d 418, 423.

If the trial court's consideration and disposition of the question had in fact been made on the basis of the statement quoted by appellant, this might not have constituted a proper exercise of the court's power and responsibility of judgment on whether a new trial should be granted, even though the court could otherwise have denied the motion as a matter of unarbitrary discretion.

We need not, however, concern ourselves with this aspect, for the trial court's denial cannot in our opinion be said to have been made on the basis of the quoted statement. The Memorandum which the court wrote gave express consideration to whether the damages could in the situation be claimed to be excessive. It pointed out that the evidence entitled the jury to find that appellee had sustained special damages in an amount approximating $12,000; that he had undergone four operations and still had some limitation of motion; that there was medical testimony to the effect that while he would have a serviceable arm, the arm would never be normal and that he would continue to experience pain in it. The Memorandum further stated evaluatively that, while the court might not have awarded as large a sum in damages, "the verdict was not in any event 'monstrous'".

Clearly, it seems to us that the court did engage in proper consideration and evaluation of the aspects of the situation and in responsible exercise of its power of judgment and discretion in relation thereto. The quoted expression, which appeared at the conclusion of the Memorandum, cannot as against this manifest consideration and evaluation be argued to have been the basis of the court's action of denial. The statement was perhaps added in reminder that the court

# 1002

could not be asked to deal lightly with the amount of a jury verdict. But whether this was its purpose or not, on the discussion contained in the Memorandum it cannot reasonably be contended that the statement was controlling of the court's action in overruling appellant's motion.

Thus appellant's contention that the court made denial of its motion for a new trial on erroneous grounds, and so was guilty of improper exercise of its power of judgment and discretion, is without merit as a basis for reversal. Nor would the judgment, which the Memorandum indicates the court exercised in denying the motion for a new trial, be capable of being argued to be so arbitrary as to represent in legal responsibility an abuse of the court's power of discretion on the elements of the situation.

Affirmed.