Robert T. EATON, Plaintiff-Appellee,

v.

The LONG ISLAND RAIL ROAD COMPANY, Defendant-Appellant.

No. 422, Docket 31970.

United States Court of Appeals
Second Circuit.

Argued April 10, 1968.

Decided May 28, 1968.

Henry J. O'Hagan, New York City (Edward G. Dougherty, Peter M. J. Reilly, New York City, on the brief), for plaintiff-appellee.

Paul J. Donnelly, Jr., Jamaica, N. Y. (George M. Onken, Jamaica, N. Y., on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and WATERMAN and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The question before us on this appeal is a recurring one in litigation under the Federal Employers' Liability Act ["FE LA"], 45 U.S.C. § 51 et seq.—Was there sufficient evidence of the defendant's negligence to warrant submitting the case to the jury?

The pertinent evidence before the jury can be briefly summarized. The principal witness at the trial was plaintiff Robert T. Eaton, a car repairman welder in the Morris Park Truck Shop of the defendant Long Island Rail Road Company ["railroad"]. He testified that it was his job to burn off worn parts from

the undercarriages or "trucks" of railroad cars with either an acetylene torch or electric welding machine.[1] The undercarriages were apparently placed on tracks running over large pits that were approximately 200 feet long and 38 inches deep.[2] The pit in which Eaton worked was not provided with a ladder, concrete steps or other means of egress, and, because of the nature of the activity and the general conditions in the railroad yard, was covered with oil and grease.

Eaton testified further that some of the workmen left the pit by crawling out over the top. This method was impractical for him, however, because as a user of flame emitting equipment it was necessary for him to remain as free as possible of the oil and grease that pervaded the pit. Accordingly, on May 31, 1963, the day of the accident, Eaton attempted to leave the pit by taking hold of two appurtenances on the truck frame and lifting himself up by extending his right foot to the top of the pit and pushing upward with his left foot. This maneuver placed great pressure on the right leg and as he came up to a sitting position he heard his right knee "click." It later developed that Eaton had suffered an internal derangement of the knee joint; he required extensive medical treatment including hospitalization and surgery on two occasions. One of the operating doctors testified that the injury to the knee could have resulted from climbing out of a pit in the manner described.

As argued to the jury by counsel for both parties, the crucial factual issue was whether the railroad had provided Eaton with a safe place to work and an adequate, non-hazardous means of leaving the pit.[3] Thus, Eaton maintained that the pit should have been provided with either steps or a ladder and placed great emphasis on the fact that he had previously complained about the absence of steps. He also claimed that comparable pits in the Morris Park yard had steps.[4] Counsel for the railroad saw the issue before the jury in much the same light. He told the jury that:

"If you believe that a man who worked there [in the yards] for eight years and did not know how to get in and out of those pits and that, madam and gentlemen, that is the end of the world as far as I am concerned.

"You heard the testimony in here, I believe, about some ladders. I submit if the railroad put ladders in the pit, the ladder is going to be covered with grease and we will have people falling off the ladders."

In addition, he suggested to the jury that Eaton should have used allegedly available wooden blocks as steps to leave the pit.[5] The experienced trial judge submitted the case to the jury on careful instructions that posed in a clear and precise manner the issue as argued by the parties:

"He [Eaton] says that it [the pit] was greasy and oily; that he used a method of getting out by which he held himself by some protrusion of the truck of the railroad car and then brought his leg up to the top of the pit and that as he did that, the increased pressure caused the injury.

1. The "truck" is the railroad car with the body removed, i.e., the frame with the wheels and motors.

2. A witness for the railroad testified that the pit was 85 feet in length and that the depth varied between 32 and 38 inches.

3. Counsel for the railroad also suggested to the jury that Eaton's injury resulted from some activity other than climbing out of the pit, but this question was obviously for the jury to resolve and the railroad does not maintain the contrary on this appeal.

4. In addition, on cross-examination, a witness for the railroad testified that pits in the railroad's Duntin shops, some of which were "less" than 4 to 4½ feet in depth, were equipped with steps.

5. The blocks were apparently one foot wooden cubes that were used by workmen as seats when taking down the axle caps of the cars.

"In effect, he says, in more legalistic language, that the Rail Road [sic] failed to provide a safe place to work, in that it failed to provide a safe means of egress from the pit. That is a fact question for you."

On this record, the jury found the railroad negligent and set the amount of Eaton's damages at $36,000. The jury also determined, however, that Eaton had been contributorily negligent and, in accordance with the provisions of the FELA, 45 U.S.C. § 53, diminished the amount of his recovery by 25 per cent. Judgment for Eaton in the amount of $27,000 was then entered and this appeal followed.

Before considering the arguments presented by the defendant railroad, it is well to clarify the unique role of an appellate court in reviewing the evidentiary basis for a jury verdict in an FELA case. While the issue continues to arouse a good deal of heat, certain relatively clear principles have emerged from the controversy. The FELA is not a workmen's compensation statute for, as we recently had occasion to note, evidence of defendant's negligence is required and "it is fundamental * * * that the fact an employee is injured is not proof of negligence of the carrier." Kuberski v. N. Y. Central R. R. Co., 359 F.2d 90, 93 (2d Cir. 1966), cert. denied, 386 U.S. 1036, 87 S.Ct. 1475, 18 L.Ed.2d 600 (1967). See also Moore v. Chesapeake & Ohio R. Co., 340 U.S. 573, 577–578, 71 S.Ct. 428, 95 L.Ed. 547 (1951); Gill v. Pa. R. Co., 201 F.2d 718, 720–722 (3d Cir.), cert. denied, 346 U.S. 816, 74 S.Ct. 27, 98 L.Ed. 343 (1953). A reading of the cases makes manifest, however, that the FELA has been construed as an avowed departure from the rules of the common law and as imposing "special features" with respect to the standard of negligence that is significantly different from that found in ordinary negligence actions. See Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 509, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

See also Shepard v. New York, N. H. & H. R. Co., 300 F.2d 129 (2d Cir. 1962); Gill v. Pa. R. Co., supra; Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 564, 77 S.Ct. 459, 1 L.Ed.2d 515 (1957) (opinion of Harlan, J., dissenting); Prosser, Torts § 82, p. 560 (3d ed. 1964); Funkhauser, What Is a Safe Place to Work, 17 Ohio St.L.J. 367, 369–70 (1956). As the Supreme Court stated in Rogers, supra, 352 U.S. at 506–507, 77 S.Ct. at 448:

"Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion can be drawn that negligence of the employer played any part at all in the injury or death."

Thus, there can be no doubt that "under the Act, the right of the jury to pass upon the question of fault and causality must be most liberally viewed." Chicago, R. I. & P. R. R. Co. v. Melcher, 333 F.2d 996, 999 (8th Cir. 1964). Compare Atlantic Coast Line R. R. v. Floyd, 227 F.2d 820, 822 (4th Cir. 1955) (recognizing the "manifest unwillingness" of the Supreme Court to sanction the taking of FELA cases from the jury).

With these precepts in mind, we turn to the railroad's principal contention, that there was no evidentiary basis for the jury's conclusion and that consequently the case should not have been submitted to the jury. In light of the applicable standard of review, we hold that there was sufficient evidence to support the jury's verdict.

On the evidence before it the jury could appropriately conclude that it was negligent for the railroad to fail to provide workmen who had to remain free of highly combustible material with a safe means of egress from the pit. Complaints had been made because of the absence of steps, other comparable pits had stairs and no satisfactory reason appeared why safety precautions were not taken in the pit in which the accident

occurred.[6] Moreover, in evaluating the defendant's conduct the jury could take into consideration the ease and presumably small expense of installing in the pit stairs, a ladder or some other safe means of egress. In determining whether a course of conduct is reasonable, the probability and gravity of injury must be balanced against the ease of taking effective preventive measures. Cf. Boston & Maine R. R. v. Meech, 156 F.2d 109 (1st Cir.) (locomotive handled in usual and customary manner could have been operated more carefully), cert. denied, 329 U.S. 763 (1946); Prosser Torts, supra, at § 33, p. 170; Funkhauser, supra, 17 Ohio St.L.J. at 371.

■ Nevertheless, the railroad maintains that the judgment below should be reversed because Eaton failed to introduce evidence of the practice of other railroads in providing means of egress from working pits. But it is well settled that industry practice is not the universal measure of due diligence. See Kuberski v. N. Y. Central R. R. Co., supra, 359 F.2d at 93; Boston & Maine R. R. v. Meech, supra; The T. J. Hooper, 60 F.2d 737, 740 (2d Cir.), cert. denied, 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1932).[7] Indeed, we know of no reason why the jury should not be deemed capable of determining on the basis of "common experience," Rogers v. Missouri Pacific R. Co., supra, 352 U.S. 503, 77 S.Ct. 443, 12 L.Ed.2d 493, whether the railroad acted in a reasonable manner in failing to provide alternative means of egress from the pit. The matter does not appear to be highly technical and, if the uninstructed judgment of lay members of the community was likely to prove erroneous because of some subtle reason, the railroad should have (and could have) introduced evidence in support of its view.[8] In sum, the jury having found the railroad negligent, it is "not free to relitigate the factual dispute in [this] court." Lavender v. Kurn, 327 U.S. 645, 652, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946).

■ The remaining points raised by the railroad require little discussion. It was not error for the trial judge to refuse to remove from the jury's consideration the question of the pit's construction or the presence of grease and oil. True, Eaton did not testify that he had slipped on grease or oil. But as our previous discussion makes clear, these matters were relevant in determining whether a safe means of egress from the pit had been provided. Indeed, as noted above, this was precisely the issue submitted by the trial judge to the jury.

■ Finally, we reject the contention that a mistrial should have been declared because remarks made by Eaton's counsel during his summation to the jury went beyond "fair comment" or were otherwise improper. The trial judge's careful instructions limited the possibility of prejudice and we find no evidence that counsel intended to violate the trial judge's rulings. In any event, the experienced trial judge was best able

6. Counsel for the railroad argued to the jury that stairs would be dangerous because they would soon be covered with grease. The jury was certainly free to reject this view. Cf. Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916 (1946).

7. Nothing said in *Kuberski* is inconsistent with the result reached here. In that case plaintiff's theory was that the railroad was negligent for failing to comply with "good industry practice" which required that a motor scooter be "readily accessible" during certain activities. The court merely held that the case should not have gone to the jury because there was no evidence that a scooter was not readily accessible. 359 F.2d at 93.

8. Nor is there merit to the argument that the jury should have been required to find that Eaton had been provided with a safe means of leaving the pit since wooden blocks were available to be used as steps. See note 4 and accompanying text. Eaton testified that while he did use the blocks as steps when they were in the pit, none were present at the time of the accident. There was no evidence that a nearby coworker could have been asked for one. In any event, Eaton clearly testified that on his job he "[could not] walk around with a block."

to evaluate the impact of the questionable remarks on the jury and he did not abuse his discretion in failing to declare a mistrial.

Affirmed.

LUMBARD, Chief Judge (dissenting):

I dissent.

However relaxed and liberal may be those standards whereby a jury is permitted to find an employer railroad has been negligent under the FELA as interpreted by the Supreme Court and this court, I can find in the record of this case no evidence of employer negligence to justify submitting this case to the jury.

In order to take an FELA case to the jury, the employee must introduce some proof from which the jury may with reason infer that the negligence of the employer played some part, however small, in the injury or death which is the subject of the suit. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508, 77 S.Ct. 443, 12 L.Ed.2d 493 (1957). Certainly, if the employee fails to introduce any evidence from which the jury could reasonably infer that there was any negligence on the part of the railroad, the employer is entitled to a directed verdict or judgment notwithstanding the verdict. Kuberski v. New York Central Railroad Company, 359 F.2d 90, 95 (2d Cir. 1966), cert. denied, 386 U.S. 1036, 87 S.Ct. 1475, 18 L.Ed. 600 (1967).

Eaton's theory is that he injured his knee in climbing out of a pit approximately 35 inches deep because the railroad failed to provide a safe place for him to work in that it did not provide steps or a ladder and allowed grease and oil to accumulate in the pit so that he could not crawl out. The crucial issue on appeal is whether Eaton presented any evidence from which the jury could reasonably infer that the railroad failed to provide a safe place to work.

Plaintiff introduced evidence that there were no steps or ladders in the pits, that pits in another of the railroad's shops had steps and that some employees had complained because there were no steps. He introduced evidence that he could not crawl out of the pit because it was covered with grease and oil and if his clothing became dirty he would be subjected to the risk of a fire when he used his acetylene torch.

On cross-examination Eaton testified that whenever there were men in the pit taking down axle caps they sat on wooden blocks and he would use one of these blocks to step out of the pit. When the men were taking down axle caps the blocks were removed from the pit by the foreman and left lying "all over the floor." Before climbing out of the pit on the day of his accident Eaton did not ask for one of these blocks to step out of the pit. There was no testimony that this method of egress, which Eaton preferred, was not available to him on the day of the accident or that it was not an adequate and non-hazardous means of leaving the pit.

Since there is nothing in the record from which the jury could reasonably infer that these wooden blocks, lying all over the floor, were not readily accessible or that they were not a safe means of egress, Eaton has not met his burden of proof of employer negligence, as minimal as it is in an FELA case, and should not have prevailed. Kuberski v. New York Central Railroad Company, 359 F.2d at 93–94.

It could hardly be argued, and indeed it was not argued by plaintiff, that the railroad was under a duty to see that the wooden blocks were in the pits at all times so that an impatient Eaton could exit from the pit instantly. However, if plaintiff had introduced some evidence that blocks on the platform were not readily accessible, it would have been proper to submit this question to the jury in an FELA case. But on the record before me, I can only conclude that in order to save a few minutes of time, for which the railroad was paying him in any event, Eaton elected to get

out of the pit without the assistance of a wooden block.

The inescapable conclusion is that Eaton failed to introduce any evidence that the means of egress from the pit provided was either unsafe or not readily accessible. The trial judge should have directed a verdict for the defendant. As he failed to do so, we should reverse and direct that judgment be entered for the defendant. Eaton is not entitled to recover $27,000 merely because he incurred an injury.