### Cecilio B. WILLIAMS, Plaintiff–Appellant,

v.

### THE LONG ISLAND RAILROAD COMPANY, Defendant–Appellee.

Docket No. 99–7064.

United States Court of Appeals, Second Circuit.

Argued Aug. 25, 1999.

Decided Nov. 10, 1999.

Michael Levine, Altier & Vogt, New York, NY, for Plaintiff–Appellant.

William G. Ballaine, Landman Corsi Ballaine & Ford P.C., New York, NY, for Defendant–Appellee.

Before: WINTER, Chief Judge, and KEARSE, and STRAUB, Circuit Judges.

STRAUB, Circuit Judge:

Plaintiff Cecilio B. Williams appeals from a judgment entered in the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*), after dismissal as a matter of law under Fed.R.Civ.P. 50(a) of the plaintiff's complaint brought pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60. Because it is not clear under the relaxed standard of negligence applicable in FELA cases that the Long Island Railroad ("LIRR") did not breach its duty to the plaintiff, we reverse and remand to the District Court for a trial on the merits.

## BACKGROUND

This case arises out of an accident that occurred while Williams was on duty at his employment as a Building and Bridges Mechanic ("B & B mechanic") for the LIRR. At the close of the plaintiff's case-in-chief in this FELA action, the LIRR moved for judgment as a matter of law based on the plaintiff's failure to prove negligence. The District Court denied the motion without prejudice to renewal. Subsequently, during the defense case, although apparently before the defendant rested, the District Court advised the parties that it had had an opportunity to examine the plaintiff's testimony and that the testimony had failed to establish the LIRR's negligence.

## I. *The Plaintiff's Case–In–Chief*

Williams testified at trial that, as a B & B mechanic, he was responsible for performing construction on the bridges, buildings, and structures of the LIRR system. One of those duties is to set up temporary platforms, which are aluminum walkways, approximately twelve feet long and three to four feet wide, used to bridge the space over an out-of-service railroad track next to a permanent platform in a station. A temporary platform allows passengers to walk from the permanent station platform across the non-functioning track and board a train on a second track. A temporary platform rests partially on the permanent platform on which it is stored, and partially on two metal support poles located between the operable and inoperable tracks. Thus, in order for a temporary platform to function, it must be pulled out from the permanent platform on which it is stored and connected to the metal support poles. The B & B mechanics must perform this task while standing on track level, approximately fifty inches below the permanent platform on which the temporary platform rests.

On August 24, 1996, Williams and two other LIRR employees were assigned to man a temporary platform on the eastbound platform of the Queens Village Station. Williams and one of his co-workers, Salvatore Sboto, pulled out the temporary platform from the permanent platform on which it had been stored. According to Williams, there are no "stairs" leading to or from the permanent platform to the track level. Accordingly, in order to get back onto the permanent platform from track level, Williams stepped up on a stack of several new railroad ties placed behind the permanent platform by LIRR employees and pulled himself up. Railroad ties are made of wood and soaked in a protective solution called creosote, which prevents water from soaking through to the ties and rotting them and, consequently, makes the ties slippery when wet.

That night it was pouring rain. After Williams and Sboto had pulled the temporary platform back in, Williams again tried to climb onto the railroad ties to get himself back on the permanent platform, but he slipped and fell and hit his knee on the ties. Williams was treated that night at the hospital, and was eventually diagnosed as having an avulsion fracture of the left patella and a rupture of his left quadriceps tendon. According to Williams, Sboto simply jumped up onto the platform from the track level.

When asked why he used the ties to climb back onto the permanent platform, Williams stated "[b]ecause, in my opinion, there was no other way to get up there." He also acknowledged that he had used this method of getting back onto the platform before and that, in fact, it was his "usual way" of doing it. Williams admitted on cross examination that he did not know if there was a ladder at the east end of the platform, and had not bothered to look if there was one.

Williams also attempted to enter into evidence as a business record an accident report concerning the incident. The LIRR objected because the report contained a section on "remedial measures." Williams suggested admitting a redacted version of the report, which the LIRR argued was cumulative because it described events as to which Williams had already testified. The District Court did not admit the report, initially based on a ruling that it was hearsay, and indicated that even if it were a business record, "the witness testified as to what the accident circumstances were."

## II. *The Defense Case*

When called by the defense, Sboto testified that he in fact had used a ladder, located at the east end of the platform, to get up and down from the permanent platform to track level. On cross examination, Sboto admitted that he had to walk approximately 300 feet to get to the ladder, and that the ties on the track that he had

to walk over to get to the ladder were also wet and soaked in creosote. The District Court precluded the plaintiff from further pursuing a line of questioning regarding the conditions of the path that Sboto took.

Robert Fleming, Assistant Supervisor of Structures for the LIRR at the time of the accident, testified that the LIRR chains ladders to temporary platforms at other locations, and that there were portable ladders available for the LIRR to distribute to the station where Williams worked.

The District Court prohibited Williams from any further inquiry as to the feasibility of chaining a ladder to the temporary platform.

## DISCUSSION

### II. *Judgment As a Matter of Law*

■ We review a district court's decision granting a motion for judgment as a matter of law *de novo*, applying the same standards as the district court to determine whether judgment as a matter of law was appropriate. *See Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 120 (2d Cir.1998).

### A. *Standard for Evaluating Evidence in FELA Cases*

■ The parties debate at great length the proper standard for determining whether there is sufficient evidence to warrant sending a case to a jury in a FELA action. The LIRR is correct, and the District Court noted, that FELA is not a strict liability statute, *see Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir.1993), and the fact that an employee is injured is not proof of negligence. *See Eaton v. Long Island R.R Co.*, 398 F.2d 738, 741 (2d Cir.1968). However, it is also true that a relaxed standard of negligence applies in FELA cases in this Circuit. *See Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir.1994) (reversing a district court's judgment as a matter of law in a FELA case).

The Supreme Court has said, based on the explicit language of the statute, that with respect to causation, a relaxed standard applies in FELA cases so that an employer is liable for injuries caused "in whole or in part" by the employer's negligence. *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506–07, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) (quoting 45 U.S.C. § 51, which states in relevant part: "Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury . . . or . . . death . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ."). While some circuits have limited the application of the "in whole or in part" language to the element of causation and apply traditional standards to the duty of care owed, *see, e.g., Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir.1997) (en banc), this Circuit has explicitly stated that it construes "the statute, in light of its broad remedial nature, as creating a relaxed standard for negligence as well as causation," *Ulfik v. Metro–North Commuter R.R.*, 77 F.3d 54, 58 & n. 1 (2d Cir.1996) (noting that the Supreme Court has not expressly held that a relaxed standard for negligence, as opposed to causation, applies under FELA) (citing *Syverson*, 19 F.3d at 825); *see also Eaton*, 398 F.2d at 741 ("[T]here can be no doubt that under [FELA] the right of the jury to pass upon the question of *fault and causality* must be most liberally viewed." (emphasis added) (internal quotation marks omitted)).

■ Accordingly, in the Second Circuit, an employer breaches its duty under FELA "if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees." *Ulfik*, 77 F.3d at 58; *see also Syverson*, 19 F.3d at 826; *Sinclair*, 985 F.2d at 76 (all citing *Gallose v. Long Island R.R.*, 878 F.2d 80, 84–85 (2d Cir.1989)). The test is "whether the proofs justify with reason the conclu-

sion that employer negligence played any part, even the slightest, in producing the injury." *Ulfik,* 77 F.3d at 58 (internal quotation marks omitted).

 Moreover, an employer may be held liable under FELA "for risks that would be too remote to support liability under common law," *Syverson,* 19 F.3d at 826, and the right of the jury to pass on factual issues "must be liberally construed," *Gallose,* 878 F.2d at 85. Therefore, "[o]nly in instances where reasonable jurors could reach only one conclusion may the court take the determination from the jury and decide the question as a matter of law." *Id.*

### B. Standard as Applied to this Case

 Under the applicable standards in this Circuit, the plaintiff's case should have been allowed to go to the jury. First, based on the plaintiff's testimony alone, there was sufficient evidence of negligence to warrant sending the case to the jury.

There is no dispute that the LIRR owed Williams a duty to provide a safe working environment. In determining whether there was a question for the jury as to breach of this duty, the District Court appeared dissatisfied that there was no direct evidence of negligence. The court focused on the plaintiff's attempt to show, through Williams's direct examination, that Sboto should have warned Williams not to use the ties; as the District Court pointed out, however, Sboto was not Williams's superior, nor was there any evidence that Sboto saw Williams attempt to climb on the ties. Because the District Court determined that "[t]hat is all of the testimony in the record with respect to negligence," it granted the defendant's motion.

 It is well-established, however, that under FELA "the jury's power to draw inferences is greater than in common-law actions." *Burns v. Penn Cent. Co.,* 519 F.2d 512, 514 (2d Cir.1975). Viewing the plaintiff's testimony in a light most favorable to him, as we must, a juror could draw the following inferences: first, the LIRR knew that the B & B mechanics had to get up and down from the fifty-inch high permanent platform in order to perform their job, and, given the frequency with which Williams testified he used the ties as steps, one could infer the LIRR knew or should have known that this was a practice among B & B workers; second, the ties were placed by the LIRR in such a way as to suggest their use as steps; third, the ties were slippery, especially when wet; fourth, at least in the plaintiff's view, there was no other reasonable means of getting back to the permanent platform. Thus, the inference could be drawn that the LIRR did not provide the plaintiff with a safe means of performing a necessary task of his employment and, in fact, provided an inherently unsafe alternative that it knew or should have known would be utilized in the manner Williams attempted when he injured himself.

 The fact that Williams was perhaps not as diligent as he should have been in exploring safer alternatives should not prohibit a finding of negligence on the LIRR's part. Rather, this fact might weigh into the jury's consideration of whether Williams was contributorily negligent. Though the evidence of the LIRR's negligence is slight, drawing the above inferences it cannot be said, based even on the evidence developed during the plaintiff's case-in-chief, that "there is absolutely no reasonable basis for a jury to find for the plaintiff." *Syverson,* 19 F.3d at 828.

Second, there was further support for the plaintiff's claim of negligence in his cross examination of the defendant's witnesses. The LIRR argues that we should not consider any evidence revealed during the defendant's case, because it was not part of the plaintiff's case-in-chief and, therefore, does not aid Williams in satisfying his burden of proof. The District Court appears to have relied solely on the plaintiff's case-in-chief in deciding to dismiss the case ("During the lunch hour, this Court has had an opportunity to examine

the testimony of the plaintiff ... both direct, cross, redirect, and recross.").

 The District Court should not have limited itself to the evidence presented during the plaintiff's case-in-chief once it denied the motion for judgment as a matter of law at the close of the plaintiff's case. Rather, the District Court should have considered all of the evidence in the record. *See Dumac Forestry Servs., Inc. v. International Bhd. of Elec. Workers,* No. 83–CV–1627, 1988 WL 985, at *2 (N.D.N.Y. Jan.6, 1988) (noting that the court must consider all of the evidence presented at trial, including that elicited on cross examination, because the defendants waived their initial motion for judgment as a matter of law by proceeding after the district court's reservation on the motion) (citing *A & N Club v. Great Am. Ins. Co.,* 404 F.2d 100, 103–04 (6th Cir. 1968)); *cf. Silva v. Worden,* 130 F.3d 26, 30 (1st Cir.1997) (stating that the trial court's reservation on a motion for judgment as a matter of law was an effective denial of the motion). In any event, we must on appeal consider all of the evidence properly in the record at the time that the case was dismissed. *See Silva,* 130 F.3d at 30 (deciding that the Court of Appeals "must ... view all of the evidence presented" at trial where the defendants chose to proceed with their case after the district court reserved on the motion); *Electro Source, Inc. v. United Parcel Serv., Inc.,* 95 F.3d 837, 838 (9th Cir.1996) (holding that Court of Appeals "must view the evidence as a whole and draw all possible inferences in favor of the non-moving party" in reviewing a district court's grant of judgment as a matter of law at the end of trial but before the case was submitted to the jury) (internal quotation marks omitted).

 On cross examination of the LIRR's witnesses, the plaintiff established facts that would allow the jury to draw the following inferences in further support of his claim of negligence: first, the ladder that existed was approximately 300 feet away and had to be reached by walking along an electrically charged track and track ties with the same slippery coating, not a reasonable alternative, especially when it was pouring rain; second, the LIRR chains ladders to temporary platforms at other locations; and, finally, there were portable ladders available for the LIRR to distribute to the station where Williams was working. These facts are especially important in a negligence case where, "[i]n determining whether a course of conduct is reasonable, the probability and gravity of injury must be balanced against the ease of taking effective preventive measures." *Eaton,* 398 F.2d at 742.

In *Eaton*—a case strikingly similar to this one—we specifically stated that "in evaluating the defendant's conduct the jury could take into consideration the ease and presumably small expense" of installing a "safe means of egress" from a pit where railroad car repair men worked. *Id.* at 741–42 (holding that there was sufficient evidence to support the jury's finding of liability against the LIRR under FELA).

In sum, based on the facts revealed during the plaintiff's case-in-chief, and as further developed during the defendant's case, a jury determination was warranted.

## II. *Evidentiary Rulings*

 Although "[d]eterminations of relevance are entrusted to the sound discretion of the trial judge," they will be reversed when they constitute an abuse of discretion. *Ulfik v. Metro–North Commuter R.R.,* 77 F.3d 54, 57 (2d Cir.1996) (internal quotation marks omitted).

 In light of the discussion above regarding the importance of the jury's consideration of the feasible alternatives and safer means of egress to the permanent platform, the District Court exceeded its allowable discretion in limiting Williams's questioning of Fleming, the Assistant Supervisor of Structures on this topic.

Though Williams was able to elicit from Fleming that the LIRR chains ladders to temporary platforms at other locations, and that there were portable ladders available for the LIRR to distribute to the station where Williams worked, the District Court prohibited any further inquiry as to the feasibility of chaining a ladder to the temporary platform.

Because the feasibility and ease of providing a portable ladder bears directly on the question of whether the LIRR breached its duty, on remand Williams should be allowed to pursue this line of questioning further. *See id.* (finding abuse of discretion where District Court prohibited testimony which bore directly on the issue of causation in FELA case, and reversing grant of judgment as a matter of law where case should have gone to the jury).

Under similar reasoning, Williams should have been able to inquire further of Sboto as to the conditions of the only other means of getting back to the permanent platform. It was central to the plaintiff's case to show that, although there may have been a ladder on the premises, it was not a safe, reasonable alternative.

Finally, there was no error in excluding the accident report. The redacted version, excluding the remedial section, was cumulative of the plaintiff's testimony.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the District Court and remand the case for trial consistent with this opinion.