Edward **PARKER**, Plaintiff-Appellee-Cross Appellant,

v.

**S/S DOROTHE OLENDORFF**, Defendant-Cross Appellee,

**Egon Olendorff**, Defendant-Third Party Plaintiff-Appellant-Cross Appellee,

**HOLLAND-AMERICA LINES, INC.**, Defendant-Third Party Plaintiff-Appellant-Cross Appellee,

v.

**J. P. FLORIO & COMPANY**, Third Party Defendant-Fourth Party Plaintiff-Appellee,

**International Paper Company**, Fourth Party Defendant.

No. 72–2112.

United States Court of Appeals, Fifth Circuit.

July 24, 1973.

Rehearing and Rehearing En Banc Denied Nov. 8, 1973.

---

John A. Bolles, Francis Emmett, New Orleans, La., for Egon Oldendorff.

Robert C. Leininger, Jr., George B. Matthews, New Orleans, La., for Holland America.

Walter F. Gemeinhardt, New Orleans, La., for Parker.

George W. Healy, III, James Hanemann, Jr., New Orleans, La., for Florio.

Before AINSWORTH, GODBOLD and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Edward Parker was injured while loading cargo on board the S/S DOROTHE OLDENDORFF.[1] The injury occurred when a wire band broke as a fellow longshoreman attempted to lift a bale of pulp paper by means of pulling against the band with a hand-held metal J-hook. The loose bale fell on Parker's leg. Seeking third party damages in addition to longshoremen's compensation, Parker sued the vessel, its owner (Egon Oldendorff), and the time charterer (Holland-America Line). The three primary defendants completed the usual triangle by joining as a third-party J. P. Florio & Co., the stevedore contractor which employed the plaintiff. Florio thereupon brought in as a fourth-party defendant International Paper Company, the packager of the bale of pulp paper which struck the plaintiff.

Parker's claims against the three primary defendants, based on negligence and unseaworthiness, were tried to a jury. The third party actions for indemnity were reserved for the court sitting without a jury. At the end of the plaintiff's case the court granted the motion of Holland-America Line for directed verdict. The plaintiff's remain-

---

1. The plaintiff has styled his suit as "Parker v. S/S Dorothe Olendorff". The correct spelling of the name of the vessel and its owner is "Oldendorff".

ing claims against the vessel and its owner were submitted to the jury which found for the defendants. Subsequently, the court held that neither Florio nor International Paper had breached any warranty owed to the primary defendants and denied all claims for indemnity.

Parker appeals from (1) the directed verdict granted to Holland-America Line and (2) the jury verdict in favor of the vessel and its owner. We affirm the directed verdict for Holland-America Line, but reverse the jury verdict for the other defendants. The vessel, its owner, and Holland-America appeal from the denial of indemnity against Florio. We affirm this ruling.

## I.

■ As pointed out above, the motion for a directed verdict made by the time charterer, Holland-America Line, was granted at the conclusion of the plaintiff's case.[2] To this point in the trial, there was absolutely no evidence upon which a jury might find Holland-America liable for operational negligence. None of the plaintiff's witnesses offered testimony which showed that Holland-America or its agents exercised control over the methods employed in loading the pulp bales. In view of the complete absence of evidence of operational negligence by Holland-America, a directed verdict at the close of the plaintiff's case was proper.[3] See, e. g., Louisville & N. Ry. v. Chatters, 279 U.S. 320, 329–33, 49 S.Ct. 329, 332–33, 73 L.Ed. 711 (1929); 5A Moore, Federal Practice § 50.02(1), n. 7.

## II.

■ Parker seeks reversal of the jury verdict for the vessel and its owner for failure to properly instruct the jury in regard to the application of the warranty of seaworthiness to the wire bands which bound the bales of pulp paper. In response to separate interrogatories the jury found that the ship was not unseaworthy and that the shipowner, through its officers and employees, was not negligent. The adverse finding on negligence is not contested on appeal. Because the charge taken as a whole failed to give the jury adequate guidance for the resolution of the factual issues presented by the evidence, we reverse the judgment entered for the defendants on the finding of seaworthiness.

The mechanics of Parker's injury are undisputed. A fellow longshoreman had placed his J-hook under the band around a 500-pound bale of pulp paper and pulled the bale off of a pallet. The band broke causing the heavy bale to tumble down on Parker's leg. Parker claimed that the band which broke was inadequate for its use in moving the bale during loading and that this constituted an unseaworthy condition for which the vessel owner was liable. The vessel owner offered no evidence indicating that the wire band was adequate for this purpose, its defense being directed almost exclusively to establishing its own right of indemnity against the stevedore contractor who was in immediate control of the loading operation.

At the pre-argument conference, Parker requested the following jury charge:

If you find the wire [with] which the bales were bound was too light for one

2. The record as supplemented clearly refutes the assertion made by counsel or Parker at oral argument that the trial court withheld its ruling on Holland-America's motion for directed verdict until after all the evidence was in. The motion was granted at the conclusion of the plaintiff's case and prior to the presentation of any defense witnesses.

3. The only testimony indicating that Holland-America's superintendent of cargo

had directed that longshoremen move the bales by inserting their hooks under the wire straps came from witnesses called by the Oldendorff defendants subsequent to the granting of Holland-America's motion for directed verdict. Such later testimony, whatever its probative value in regard to Holland-America's negligence, cannot be relied upon by the plaintiff to upset the directed verdict previously properly granted at the close of the plaintiff's evidence.

of its purposes, namely its use in dragging the bales of wood pulp after longshoremen's hooks had been connected therewith, that this wiring would be defective and defective wiring would constitute unseaworthiness. The defendants did not object to the form or substance of the requested instruction and the trial court informed counsel for Parker that this requested charge would be given. However, after counsel had argued, the court omitted the proposed instruction from its charge to the jury. When Parker took exception to the failure to give the instruction, the court stated that it had decided that the requested charge "was not a correct statement of the law" and therefore would not be given.

 We cannot agree with the court below that Parker's requested instruction misstates the applicable law. The proposed charge has two distinct purposes. First, it directs the jury's attention to the legal principle, recognized by the Supreme Court in Atlantic & Gulf Stevedores v. Ellerman Lines, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962), that a vessel's warranty of seaworthiness extends to the containers in which cargo is stored. As the Court explained in Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 213–214, 83 S.Ct. 1185, 1190, 10 L.Ed.2d 297 (1963), *Ellerman* and prior cases establish

> . . . . that things about a ship, whether the hull, the decks, the machinery, the tools furnished, the stowage, or the cargo containers, must be reasonably fit for the purpose for which they are to be used. . . . When the ship owner accepts a cargo in a faulty container . . .. he assumes the responsibility for injury that this may cause to seamen or their substitutes on or about the ship.

*See* Lucas, Flood Tide: Some Irrelevant History of the Admiralty, 1964 S.Ct. Rev. 249, 250–56. After *Ellerman* and *Gutierrez,* there is no doubt that an inadequate or defective cargo container renders a vessel unseaworthy as a matter of law. *See* Noble v. Lehigh Valley Railroad Co., 388 F.2d 532 (2d Cir. 1968). Second, the requested charge instructs the jury that one of the intended purposes of the band which broke was to serve as a point of attachment for longshoremen's hooks during loading. This part of the instruction is crucial because it establishes the legal standard by which the strength of the bands is to be judged. While a vessel warrants that every cargo container is adequate to protect the cargo and to prevent spillage, common sense indicates that a shipowner does not warrant every part of any cargo container is strong enough to serve as a point of attachment for longshoremen's hooks or other lifting devices. Thus, the vessel owner is not an insurer against accidents resulting from lifting cargo by metal straps which are not intended for such use. Reed v. M. V. Foylebank, 415 F.2d 838 (5th Cir. 1969), *cert. denied,* 397 U.S. 910, 90 S. Ct. 909, 25 L.Ed.2d 91 (1970). On the other hand, with some types of cargo the use of bale bands for lifting and dragging may be an operating condition which should be reasonably anticipated. If it is, the vessel as a matter of law warrants the bands sufficiently strong for this purpose. *See* Marshall v. Ove Skou Rederi A/S, 378 F.2d 193, 197–198 (5th Cir.), *cert. denied,* 389 U.S. 828, 88 S.Ct. 86, 19 L.Ed.2d 84 (1967); Mills v. Mitsubishi Shipping Co., 358 F.2d 609, 612–613 (5th Cir. 1966), cert. denied, 386 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 600 (1967); Walker v. Harris, 335 F.2d 185, 191 (5th Cir.), cert denied, 397 U.S. 930, 85 S.Ct. 326, 13 L.Ed.2d 342 (1964). The evidence before the trial court, including the testimony of expert stevedores called by the defendants, showed that as a matter of long standing custom the normal method by which paper pulp bales are moved during final stowage is by inserting longshoremen's hooks under the bale bands. Pulp bales cannot be manhandled without hooks because the exterior is slick and smooth. The alternative of inserting J-hooks directly in the bales damages the cargo and is uni-

versally considered unacceptable by shippers. Since undisputed testimony showed that it was reasonably foreseeable that the bands would be used as points of attachment for longshoremen's hooks, the plaintiff was entitled to a limited peremptory instruction that the shipowner warranted the bands to be safe as appliances for handling the bales. *See* United States Lines Co. v. King, 363 F.2d 658, 660–661 (4th Cir. 1966).

■ The court's last minute change of heart not only denied the plaintiff a correct charge which he reasonably expected to be given and upon which he based his argument to the jury, *see* F. R.Civ.P. 51, it also left the jury unguided on a very crucial point of their deliberations—the known or intended use of the bands. Since intended purpose establishes the standard by which warranty of seaworthiness is to be judged, instructions on this issue were central to the correct resolution of the question of whether the bands were "adequate." The court's general charge contains absolutely no reference to the application of the warranty of seaworthiness to the bands. The only part of the charge which directed the jury's attention to the fact that the bands constituted a part of the ship's gear which could play a role in determining unseaworthiness came in an instruction the court read as being given "at the request of the defendant" which stated:

> The shipowner does not warrant the seaworthiness of the cargo per se, but does warrant the seaworthiness of the cargo container; that is the bands in this case. If you find that the bands in this case were reasonably fit for the purpose for which they were to be used, the vessel would not be unseaworthy.

But this instruction was not the equivalent of the charge promised to the plaintiff and later withdrawn. While it told the jury that the bands were within the warranty of seaworthiness it gave them no clue whatsoever that the purpose of the bands was the key to deciding whether the warranty was sustained or breached. Bands reasonably fit to keep a bale bound together could be patently too weak for use in moving the bale from place to place.

In Marshall v. Isthmian Lines, Inc., a case similar on its facts to the one *sub judice,* this court held that, where the central issue for the jury was the standard of care applicable to the decision of a vessel to accept cotton bales with defective bindings, the trial court was under an affirmative obligation to explain the effect of certain federal regulations bearing on the duty of the shipowner. In reversing the jury verdict, we pointed out:

> Under these conditions, it was not enough to leave the whole thing within the vague contours of a general charge with the inescapable boilerplate instructions on negligence and the like. . . . We and other Courts have held that the duty is to give instructions which are meaningful and translated—not in terms of some abstract case—but into the facts of this particular case. . . . [W]hen the jury undertakes to resolve [a disputed issue of fact], they are entitled to be told what the dispute is all about.

334 F.2d 131, 138 (5th Cir. 1964). In the present case, the plaintiff requested an instruction which was a correct statement of the law and was factually in accord with the undisputed evidence. The request was central to the plaintiff's case and the subject matter was not adequately covered elsewhere in the court's charge. We are left with the firm conviction that the jury verdict must be reversed. Boothe v. Holmes, 399 F.2d 495, 499–01 (5th Cir. 1968); Lind v. Aetna Casualty & Surety Co., 374 F.2d 377, 380–81 (5th Cir. 1967). A new trial of the unseaworthiness issue under procedures not inconsistent with our opinion here is required.

■ In addition to his complaints about the jury charge,[4] Parker contends that he was entitled to a directed verdict against the vessel and its owner since the method of stowage created an unsafe place for him to work as a matter of law. Since a favorable decision on appeal on this issue would require us to render a judgment on liability for Parker, we must reach the merits of this contention. The evidence showed that Parker was injured while working on top of a high pile of pulp bales and that at the edge of the pile was a deep trench, running across the entire width of the ship, which had been purposefully left open during the loading at the ship's direction to protect the pulp paper cargo from contamination by an adjoining load of carbon black. Assuming arguendo that this open gap in stowage created an unseaworthy condition, there was a dispute of fact whether the existence of the trench contributed to Parker's injury. *See* Wilson v. Societa Italiana de Armamento (Sidarma), 409 F.2d 484 (5th Cir. 1969). While Parker argues that the trench prevented his escape from the tumbling bale, two of his own witnesses testified that the bale struck Parker, pinning him against another bale, before he had any chance to move. Whether the trench constituted an unseaworthy condition, and whether its existence was a proximate cause of the injury, were undoubtedly jury questions and a directed verdict on this claim was properly denied.

### III.

The vessel, its owner, and the time charterer appeal from the denial of indemnity against the stevedore contractor. At the conclusion of the non-jury phase of the trial, the court found that the "third-party plaintiffs have failed to show by a preponderance of the evidence that any of the activities of the third-party defendant constituted a breach of any warranty which may have been owed or that any of the actions of the third-party defendant constituted negligence. On the contrary, the evidence established that J. P. Florio and Company, Inc., conducted its work in a safe and workmanlike manner."

■ If it were not clear at the time of the decision below, it has now become settled law that a third-party action for indemnity under the *Ryan* doctrine[5] must flow from negligence or a breach of the stevedore's warranty of workmanlike performance; the stevedore is not an insurer either against affirmative liability or against costs and attorneys' fees resulting from actions brought by injured longshoremen. Diaz v. Western

4. Parker also appeals from the failure to give his requested charge on the doctrine of *res isa loquitur* in addition to the lack of clarity in the charge on operational negligence. Since Parker failed to raise either of these points in his objections to the charge before the jury retired, the asserted errors were not preserved for appeal. F.R.Civ.P. 51. In light of the retrial by our decision above, we point out that in so far as the court's instruction suggested that "continuing operational negligence" by the employees of the stevedore would not create an unseaworthy condition for which the ship would be liable, the charge was not a correct statement of the law. Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971), distinguished between isolated, personal negligent acts of fellow longshoremen and conditions of unseaworthiness. Our subsequent opinion in Robinson v. Showa Kaiun K. K. makes clear, however, that a continuing series of negligent acts by longshoremen may become so related to the status of the vessel, that the longshoremen's action following the negligent practice might give rise to liability under the unseaworthiness doctrine. 451 F.2d 688, 690 (5th Cir. 1971); *see* Kyzar v. Vale Do Ri Doce Navegacai, S.A., 464 F.2d 285, 289–292 (5th Cir. 1972).

5. Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); *see also* Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed. 2d 491 (1958); Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Italia Societa ner Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964).

Ventures, Inc., 467 F.2d 1361 (5th Cir. 1972), cert. denied, 410 U.S. 967, 93 S.Ct. 1445, 35 L.Ed.2d 702 (1973). Therefore, in order to receive indemnity against the stevedore, the third-party plaintiffs must demonstrate that the district court's finding that they failed to prove negligence or breach of contractual warranty is clearly erroneous. Delaneuville v. Simonsen, 437 F.2d 597 (5th Cir. 1971).

■ As pointed out above, the testimony uniformly showed that the lifting and dragging of pulp bales from pallet boards to final stowage by inserting longshoremen's J-hooks under the bale bands was the customary practice at the Port of New Orleans. The fact that a practice is customary does not, of course, prove that it is a safe or workmanlike method to handle cargo. Curtis v. A. Garcia Y Cia, Ltda., 272 F.2d 235, 237, 85 A.L.R.2d 1186 (3rd Cir. 1959); see also Salem v. United States Lines, 370 U.S. 31, 37, 82 S.Ct. 1119, 1123, 8 L.Ed.2d 313 (1962); Burns v. Anchor-Wate Co., 469 F.2d 730, 734–735 (5th Cir. 1972); June T., Inc. v. King, 290 F.2d 404, 405–406 (5th Cir. 1961). However, in the present case, stevedoring experts also testified that dragging pulp bales by the wire bands was a normally safe practice. Indeed, Florio's stevedore superintendent, called by the Oldendorff parties, stated that in his 15 years of experience on the docks he had never known a band on a bale of wood pulp to break during loading prior to the day of Parker's accident. The only proof to the contrary came from the witness, Percy Perry, a longshoreman who worked on the crew with Parker. He testified that the use of hooks in the movement of this type of cargo was necessary because the wire would make a man's hands too sore to permit him to work for extended periods, and he further testified that small wire of the size used here tends to break frequently. In describing the experience in the *Dorothe Olendorff* on the morning of Parker's injury, Perry variously stated the number of breaks in wire bands to be "a

few", "several", "some", "seven", and "it might have been ten or twelve or it might have been two or three" (He saw "two or three"). It is obvious that the court as the trier of fact on this issue did not credit Perry's testimony as establishing that the stevedore had engaged in an unsafe loading procedure.

The only specific evidence indicating that a popped band had caused an injury on this particular day related to another longshoreman, Tanner, who had been slightly injured when the wire band on another bale in the same load broke, causing him to fall off the bulkhead. The third-party plaintiffs argue that this earlier accident put the stevedore contractor on notice of the inadequate or dangerous nature of the bands on this load of pulp and that the failure to conduct an inspection of the bands on the remaining bales or to change to a different method of loading was a breach of the duty owed by the stevedore to the vessel. *See* Brock v. Coral Drilling, Inc., 477 F.2d 211, 215–217 (5th Cir. 1973); Burrage v. Flota Mercante Grancolombiana, S. A., 431 F.2d 1229, 1232–1233 (5th Cir. 1970); T. Smith & Son, Inc. v. Ekibs A/S Hassel, 362 F.2d 745, 747 (5th Cir. 1966).

■ The fact that a stevedore contractor continues to work a load of cargo by use of the bale bands with the knowledge that the band on a single bale caused injury when used for lifting does not as a matter of law constitute the continuation of this general practice a breach of the warranty of workmanlike performance. *See* Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., *supra*, 369 U.S. at 364, 82 S.Ct. at 786, reversing, Beard v. Ellerman Lines, Ltd., 289 F.2d 201, 207 (3rd Cir. 1961). In the present case, following the first accident involving a broken band, the stevedore contractor's foreman took what the court could have found was adequate corrective action by warning his crew to be more cautious and to avoid standing near the open bulkhead while pulling on the bands. In light of his long experience that the breaking of

wire bands while moving pulp bales was extraordinarily rare, his failure to stop the lifting of bales off of pallets by the bands was not unreasonable. On the facts disclosed by this record, we cannot conclude that the finding by the district court that the third-party plaintiffs failed to meet their affirmative burden of proving negligence or a breach of the warranty of workmanlike performance is clearly erroneous. Garner v. Cities Service Tankers Corp., 456 F.2d 476 (5th Cir. 1972); Scott v. S. S. Ciudad De Ibague, 426 F.2d 1105 (5th Cir. 1970); Humble Oil & Refining Company v. Philadelphia Ship Maintenance Company, 444 F.2d 727 (3rd Cir. 1971). Having had a full fair opportunity to try the indemnity issue to the court, the parties are not entitled to a second trial of that issue merely because we have reversed the jury-tried portion of the case on unseaworthiness.

Affirmed, in part, reversed, in part, and remanded.

AINSWORTH, Circuit Judge (dissenting):

I cannot join the majority in the reversal of the judgment in favor of defendants, dismissing plaintiff's suit, rendered on answers by the jury to written interrogatories, that the vessel was not unseaworthy and the shipowner was not negligent, where the basis assigned in the majority opinion is the stated inadequacy of an instruction of the trial judge to the jury on what constitutes unseaworthiness.

The trial judge did not give the instruction on unseaworthiness in the language proffered by plaintiff's counsel, though he had agreed to do so. But the instruction which the Court gave was sufficient to cover what was reasonably necessary under the facts developed in the trial. Considering the instructions as a whole and the specific charge as to unseaworthiness in connection with the cargo bands, I believe the charge was sufficient under the law and prior holding in this court, and that the jury could and did intelligently decide the case on the evidence. We said in Delancey v. Motichek Towing Service, Inc., 5 Cir., 1970, 427 F.2d 897, 902:

"A litigant is entitled to have a trial judge advise the jury of his claims and theories of law, if, they are supported by the evidence and brought to the attention of the court. Nehring v. Empresa Lineas Maritimas Argentinas, 5 Cir. 1968, 401 F.2d 767; Marshall v. Isthmian Lines, Inc., 5 Cir. 1964, 334 F.2d 131; Oliveras v. United States Lines Co., 2 Cir. 1963, 318 F.2d 890. The court is not required to give instructions in the language and form a litigant's lawyer fancies. The court has 'considerable latitude in the choice of language used to convey to the jury in a clear and correct fashion the applicable law'. Kayo Oil Co. v. Sammons, 5 Cir., 1963, 321 F.2d 729, 730. See also Nowell v. Dick, 5 Cir., 1969, 413 F.2d 1204. If the instruction as given sufficiently covers the case so that a jury can intelligently determine the questions presented, the judgment will not be disturbed because further amplification is refused. United States v. Bayer, 1947, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654; Ohio & Mass. Ry. v. McCarthy, 1878, 96 U.S. 258, 24 L.Ed. 693."

The district court's failure to give the jury charge agreed upon was a matter of trial court discretion which I consider was not abused, and which does not require reversal. See M. H. Trawick v. Manhattan Life Ins., 5 Cir., 1973, —— F.2d ——.

Especially disturbing is the conclusion of the majority to foreclose the issue of indemnity against third-party plaintiffs, on remand and retrial of this case. Fundamental equity requires that the indemnity issue should likewise be retried. Third-party plaintiffs are deprived of basic fairness by the majority's denial of the opportunity to develop facts and evidence in light of the majority opinion and to obtain a new ruling

on the issue of indemnity. If plaintiff is to be accorded a new day on the question of unseaworthiness, evenhanded justice also requires a similar opportunity to third-party plaintiffs on the indemnity issue.

## ON PETITION FOR REHEARING AND PETITION FOR REHEAR-EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

AINSWORTH, Circuit Judge (dissenting):

I dissent from failure to grant a rehearing, for reasons expressed in my dissent to the majority opinion.