Daniel AVENA, Plaintiff-Appellant,

v.

CLAUSS & CO., Defendant and Third-Party Plaintiff-Appellee,

v.

MAUDE JAMES, INC., Third-Party Defendant-Appellee.

Nos. 1079, 1226, Dockets 73–2787, 74–1016.

United States Court of Appeals, Second Circuit.

Argued June 24, 1974.

Decided Oct. 1, 1974.

---

Moore, Circuit Judge, dissented and filed opinion.

William M. Kimball, New York City (Burlingham, Underwood & Lord, New York City, on the brief), for defendant and third-party plaintiff-appellee.

Albert V. Testa, New York City (Alexander, Ash, Schwartz & Cohen, Sidney A. Schwartz, New York City, on the brief), for third-party defendant-appellee.

Before MOORE and FEINBERG, Circuit Judges, and PALMIERI,* District Judge.

FEINBERG, Circuit Judge:

Plaintiff Daniel J. Avena, a longshoreman employed by Maude James, Inc. (the stevedore), was allegedly injured aboard the S.S. Gronnebek, owned by Clauss & Co. (the shipowner) in July 1967. In March 1970, plaintiff sued defendant shipowner; the latter impleaded the stevedore as third-party defendant. In October 1973, the case was tried in the United States District Court for the Southern District of New York before Charles L. Brieant, Jr., J., and a jury on the questions whether the vessel was unseaworthy and the ship's officers negligent. At the close of plaintiff's case, the latter theory was voluntarily abandoned. Then, after hearing argument from the parties, the judge also dismissed plaintiff's claim of unseaworthiness on the ground that there was insufficient evidence to create a jury issue. Plaintiff appeals, claiming that he had made out a *prima facie* case. We agree, and therefore reverse the judgment dismissing the complaint.

Considering the evidence in the light most favorable to plaintiff, as we must when a case is taken away from the jury, the facts are as follows: Plaintiff, a longshoreman for many years, was moving a 300-pound cardboard carton off a wooden pallet when he was injured. Plaintiff had inserted the end of his longshoreman's hook under one of the several metal bands which secured the carton. The band was about one inch

* Of the United States District Court for the Southern District of New York, sitting by designation.

wide and when plaintiff pulled on it with the hook, the band broke, lacerating his hand and causing him to lose his balance and fall backwards. Plaintiff testified that longshoremen in New York customarily hook bands like these to haul such cargo and that he was doing so in the usual way. No other witness testified for plaintiff. On this record, the judge held that there was

> no evidence at all before me which would warrant a reasonable juror to reach the inference that the steel tape, or metal tape around the carton broke because of any defect in the steel strap or tape.
>
> A defective strap is an essential element in a cause of action for unseaworthiness, and that, gentlemen, is about all there is to it, and I find that there has been a failure of proof . . . .

■ Plaintiff argues that this holding was incorrect because it was based on the faulty assumption that he had to prove why the band broke. Plaintiff asserts that he only had to show "that the device in question failed under conditions when it should have functioned properly." Oliveras v. American Export Isbrandtsen Lines, Inc., 431 F.2d 814, 816 (2d Cir. 1970). He further contends that if "an appliance or piece of equipment breaks or fails in the normal course of use, a plaintiff need not show why the failure occurred, but only that it did occur with the resulting injury." Greene v. Vantage S.S. Corp., 466 F.2d 159, 163 (4th Cir. 1972). We agree with these propositions but they do not decide the crucial issue before us; they merely state it. That issue is whether sufficient evidence existed that the use being made of the band when it snapped was an "intended" one. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).[1]

See Blier v. United States Lines Co., 286 F.2d 920, 923 (2d Cir.), cert. denied, 368 U.S. 836, 82 S.Ct. 32, 7 L.Ed.2d 37 (1961). To this question we now turn.

One "intended" use of the steel bands wrapped around the 300-pound carton was to secure it so that its contents would not fall out during loading—that proposition is so clear as to be self-evident. What is less obvious is that any one of the bands was meant to be used to support the weight of the carton while it was being moved. For the doctrine of unseaworthiness to apply here, we believe that plaintiff was required to prove that a longshoreman's use of the band to yank it off a pallet and into stow was "intended." Plaintiff apparently accepts this burden and relies on his own brief testimony as to the custom in New York to provide the necessary evidence. Defendant shipowner argues in response: "Testimony that a paint brush broke while being customarily used aboard ship to hammer spikes would not be *prima facie* evidence that the brush was unseaworthy."[2] In other words, as defendant also contends: "Customary hooking which breaks bands would not make the bands unseaworthy unless the custom were proper."[3]

■ But this reply begs the question. To claim in effect that custom does not evince intended use unless the custom itself is proper brings the argument full circle without shedding light on the basic problem—whether plaintiff's proof sufficed to go to the jury. To be sure, evidence of custom need not be conclusive on the matter of proper or "intended" use. Marshall v. Ove Skou Rederi A/S, 378 F.2d 193, 201, 202 (5th Cir.), cert. denied, 389 U.S. 828, 88 S.Ct. 86, 19 L.Ed.2d 84 (1967); The T. J. Hooper, 60 F.2d 737, 740 (2d Cir.) (L. Hand, J.), cert. denied, 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1932). But it cer-

---

1. On the doctrine of liability for unseaworthiness, the Court stated:
 What has been said is not to suggest that the owner is obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use.
 Id.

2. Brief for Defendant-Appellee at 3.

3. Id. at 2.

472

tainly has some probative value, Parker v. S/S Dorothe Olendorff, 483 F.2d 375, 379–380 (5th Cir. 1973), cert. denied, 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 110 (U.S. April 2, 1974); Siderewicz v. Enso-Gutzeit O/Y, 453 F.2d 1094, 1095 (2d Cir.), cert. denied, 407 U.S. 912, 92 S.Ct. 2441, 32 L.Ed.2d 686 (1972); Shenker v. United States, 322 F.2d 622, 626 (2d Cir. 1963), cert. denied, 376 U. S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606 (1964), and in fact would seem to constitute the *usual* form of proof on this issue, Nuzzo v. Rederi, A/S Wallenco, 304 F.2d 506, 510–511 (2d Cir. 1962)—at least where the questioned practice is neither patently proper nor obviously unintended (as in defendant's paint brush example). Cf. Tropea v. Shell Oil Co., 307 F.2d 757, 763 (2d Cir. 1962) (custom in trade relevant on issue of due care in negligence cases).

 Here, the dragging of a heavy carton by its band was not a clearly unintended use. Indeed, the Fifth Circuit recently held that upon evidence of a "long standing custom" of moving bales "by inserting longshoremen's hooks under the bale bands", the longshoreman was entitled to a "peremptory instruction that the shipowner warranted the bands to be safe as appliances for handling the bales." Parker v. S/S Dorothe Olendorff, supra, 483 F.2d at 379–380. Admittedly, the evidence in this case was fairly skimpy. Cf. Parker v. S/S Dorothe Olendorff, supra. But the fact remains that proof is often meager in cases like this. In Rice v. Atlantic Gulf & Pacific Co., 484 F.2d 1318, 1321 (2d Cir. 1973), we noted "the liberal attitude displayed toward unseaworthiness claims such as the present one, . . . . which are closely analogous to claims under the Federal Employers Liability Act . . . ." No argument has been made, to us or to the court below, that plaintiff—a longshoreman with 31 years of experience at the time of trial—lacked sufficient expertise to testify to custom in the trade regarding the moving of cargo. Cf. Tropea v. Shell Oil Co., supra, 307 F.2d at 763 (service sta-

tion operator of 20 years qualified to testify to custom of trade in disposing of waste pumped from full storage tanks); T. H. Browning S.S. Co. v. F. H. Peavey & Co., 235 F.2d 5, 9 (8th Cir. 1956) (witness who had been seaman on Great Lakes for 25 years and chief engineer for a number of years qualified to give evidence as to customary manner of conducting dock tests). Besides, expert testimony may not even have been required since the behavior at issue (use of a metal band to drag a carton) was susceptible to lay jurors' common sense evaluation as to its propriety. See Salem v. United States Lines Co., 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); Eaton v. Long Island R.R., 398 F.2d 738, 742 (2d Cir. 1968). Cf. Nuzzo v. Rederi, A/S Wallenco, supra, 304 F.2d at 512 (Clark, J., dissenting, would not require plaintiff workman to engage in battle of experts with industry defendants).

On the record before us, plaintiff adduced sufficient evidence to entitle him to a jury trial. Therefore, we reverse the judgment dismissing the complaint and remand for further proceedings consistent with this opinion.

MOORE, Circuit Judge (dissenting):

I dissent.

In my opinion, the fallacy underlying the conclusion reached by the majority is to be found in its assumption that the function of the steel bands was to enable longshoremen to use them as a grip for their hooks in endeavoring to move a 300 pound container from one position to another—hence, an "intended use." But "intended" by whom is the real question.

The majority holds that evidence showing that it is customary for longshoremen to place their hooks around the steel bands binding certain cargo and to use the bands for hauling the cargo is sufficient to raise a jury question on whether this was an "intended" use for the bands. I am unable to agree with this conclusion.

The duty of a shipowner is "to furnish a vessel and appurtenances reasonably fit for their intended use." Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). In countless cases involving claims of unseaworthiness, evidence of custom has been introduced to show that a ship was *reasonably* fit. E. g., Nuzzo v. Rederi, A/S Wallenco, 304 F.2d 506 (2d Cir. 1962). Custom need not in all instances be conclusive on the issue of reasonableness, but it is evidence thereof. Id. at 510. I cannot, however, ascribe to the view that because longshoremen customarily use devices in a certain manner, this use thereby becomes an intended one. The intended use must be determined with reference to the shipper and not to the cargo-handling practices that longshoremen may have developed. The shipowner ought not to be charged with having intended a use merely because that use has become the custom, at least in the absence of direct evidence that the shipowner knew of the practice and acquiesced in it.

The cases cited by the majority, by and large, use evidence of custom to show reasonableness, not intended use. Of the decisions in this Circuit cited by the majority, only Shenker v. United States, 322 F.2d 622 (2d Cir. 1963), cert. denied, 376 U.S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606 (1964), used evidence of custom to show intended use. But in that case the plaintiff was merely walking on top of a hatch when he tripped over some loose dunnage and was injured. Quoting the findings of the district judge, the court found that

> [I]n walking on the hatch Shenker and Judice were giving it an intended use because they "were following a customary practice" that was "foreseeable as a likely one by the owner and was consonant with a shipboard procedure recognized as permissible." 322 F.2d at 626.

I do not deem this language in *Shenker* to be controlling in this case because it is patently obvious that people must walk on a hatch to accomplish loading and unloading tasks, if not for numerous other reasons. Thus, custom or not, the shipowner must have intended that people walk on the hatch. Here, in contrast, it is by no means obvious that the steel bands tightly binding the cargo were to be used for moving the cargo about the decks.

A case relied upon by the majority and by appellant is Parker v. S/S Dorothe Olendorff, 483 F.2d 375 (5th Cir. 1973), cert. denied, 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 110 (1974). There the plaintiff had also moved cargo by placing his hook around the metal bands and had been injured when one of the bands broke. The court held that since uncontradicted testimony showed that it was a long standing custom to use the bands in this manner, the use became a condition which should have been reasonably anticipated. The plaintiff there was therefore entitled to an instruction which indicated that use in dragging the cargo was one of the purposes of the hands. 483 F.2d at 379–380.

The issue came before the Court of Appeals upon the failure of the trial court to give a requested charge that if the wire binding the bales was too light for its purpose namely, dragging bales after inserting longshoremen's hooks into the wire, this fact would make the vessel unseaworthy. The court was undoubtedly influenced by the fact that the trial judge had originally assured counsel that he would give such a charge but changed his mind. The appellate court believed that "one of the intended purposes of the band which broke was to serve as a point of attachment for longshoremen's hooks during loading." The court said: "This part of the instruction is crucial because it establishes the legal standard by which the strength of the bands is to be judged." 483 F.2d at 379. However, the majority seemingly qualified immediately the force of its decision by saying:

> While a vessel warrants that every cargo container is adequate to protect

the cargo and to prevent spillage, common sense indicates that a shipowner does not warrant every part of any cargo container is strong enough to serve as a point of attachment for longshoremen's hooks or other lifting devices. Thus, the vessel owner is not an insurer against accidents resulting from lifting cargo by metal straps which are not intended for such use. Reed v. M. V. Foylebank, 415 F.2d 838 (5th Cir. 1969), cert. denied, 397 U.S. 910, 90 S.Ct. 909, 25 L.Ed.2d 91 (1970).

483 F.2d at 379.

In Reed v. M. V. Foylebank, 415 F.2d 838 (5th Cir. 1969), cert. denied, 397 U.S. 910, 90 S.Ct. 909, 25 L.Ed.2d 91 (1970), the Fifth Circuit had no difficulty in affirming the dismissal of the libel in a case involving the breaking of a steel band enclosing a crate under the stress of a longshoreman's hook with which he was pulling the crate into place. However, the court rationalized in terms of operational negligence and held that "The sole proximate cause of appellant's injury was his own negligent use of the hand hook behind the steel band." 415 F.2d at 839.

In the instant case, all that this decision can accomplish is to alert shipowners and stevedoring companies to the necessity of posting notices visible to all longshoremen "Do not attach hooks to, or under, steel strapping for any purpose." An alternative, of course, would be not to accept as cargo any container which did not have an unbreakable device for pulling it.

The fact that a use may have been reasonably anticipated does not make it an intended one. To so hold would rewrite the definition of unseaworthiness contained in *Mitchell, supra.* Furthermore, shippers cannot be charged with knowledge of every custom of the longshoremen. Common sense surely does not dictate that the metal bands be used for moving cargo. I would, therefore, require the plaintiff to introduce more than evidence of custom before subjecting a shipowner to potential liability.