**Heriberto OLIVERAS, Plaintiff-Appellant,**

v.

**AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant-Appellee.**

**No. 204, Docket 33401.**

United States Court of Appeals, Second Circuit.

Argued Nov. 3, 1969.

Decided Sept. 10, 1970.

Martin Levine, Joseph Freidberg, New York City, for appellant.

Daniel Flynn, New York City, for appellee.

Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.

WATERMAN, Circuit Judge:

In this action plaintiff, an able bodied seaman, alleging that the shipowner was negligent and that its vessel, the *Export Buyer*, was unseaworthy, sought to recover damages for an injury to his hand received on June 14, 1965 [1] while work-

---

1. Plaintiff alleged he had been injured twice and claimed compensation for both injuries in the action below. Judgment was entered dismissing both of plaintiff's

ing aboard the *Export Buyer*. From a judgment for defendant shipowner and the denial of his pre-judgment motion to set aside an adverse jury verdict plaintiff appeals. We reverse and remand for a new trial solely on the issue of whether the ship was unseaworthy. There would appear to be no evidence in the record to support the contention that the shipowner or any fellow employee had been negligent. The issue was not argued upon appeal and we consider it to have been understandably waived.

The plaintiff, while standing the noon to four p. m. watch, was ordered by the Mate of the watch to scrub with soap and fresh water the starboard wing of the bridge, an open area adjacent to the wheelhouse. At the time, the vessel was somewhere off the New England coast and rough seas were causing the ship to pitch and roll and to take waves and spray over the bow. The sliding door to the wheelhouse was open, it having been secured with a wedge and a hook to keep it from closing. At one point the ship pitched and plowed into the sea causing a wave to break over the bow and continue upward in the direction of the bridge, and the plaintiff, noticing that the area where he was working was about to get drenched, bolted through the open door into the wheelhouse. Almost simultaneously the door slid shut due to a sudden movement of the pitching ship and slammed against the plaintiff's hand.

At trial the defendant did not dispute the plaintiff's account of the accident and in his opening statement counsel even related, in substance, the plaintiff's version of the facts.

After charging the jury the trial court submitted a special verdict to the jury in which the jury was asked to answer whether at the time of this June 14, 1965 accident the ship was unseaworthy. The jury returned the special verdict and found that the vessel was not unseaworthy. Plaintiff had not moved for a

claims. Only the second claim, that arising from the occurrence of June 14, 1965, is before us. No appeal was taken from

directed verdict, had not objected to the submission of the issue of unseaworthiness to the jury, and had taken no exceptions to the judge's charge. After the verdict had been returned, however, plaintiff moved to set it aside as against the weight of the evidence and because erroneous as a matter of law. The motion was denied and judgment was entered dismissing plaintiff's complaint.

Plaintiff contends that the appealed-from judgment in favor of the defendant should be reversed because the facts are undisputed and, upon these undisputed facts, the ship was unseaworthy as a matter of law. We have the power to review undisputed facts, and, upon their review, to determine the issue of unseaworthiness, e. g., Van Carpals v. The S.S. American Harvester, 297 F.2d 9, 12 (2 Cir. 1961), cert. denied, 369 U.S. 865, 82 S.Ct. 1031, 8 L.Ed.2d 84 (1962). We agree with appellant that on the facts as both parties presented them at trial the ship was unseaworthy.

The duty to provide a seaworthy ship is absolute in the sense that negligence need not be shown to hold a shipowner liable for injury. This obligation, however, is not so absolute as to require an owner to furnish an accident-free ship.

> The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960).

Thus, in extraordinary or unforeseeable circumstances a ship's equipment or fittings may break or malfunction without necessarily rendering the vessel or the appurtenances unreasonably "fit for their intended use."

the adverse judgment entered on the other claim.

# 816

We do not find, however, that the *Export Buyer*, an ocean-going vessel, was subjected to such an extraordinary peril or storm in mid-June on the North Atlantic that a wedge and hook could not be reasonably expected to secure the wheelhouse door. First, there is no evidence that the weather conditions encountered at the time of plaintiff's injury were the least bit unusual or unexpected for a ship rigged to steam in the Atlantic Ocean. A deck log entry made three hours prior to the accident merely indicated a "very rough west southwest sea and swells, vessel pitching and rolling." There is nothing in the testimony introduced at trial to indicate that the ship was in an ultrahazardous position; in fact, defendant's counsel even admitted in his closing statement to the jury that "there was moderately heavy weather." The very fact that the plaintiff was permitted to work in an area exposed to the sea weighs against the possibility that the ship was operating under such perilous conditions and uncontemplated forces as to relieve the shipowner of liability for the failure of equipment "reasonably fit" to function under the stress and strains of transatlantic crossings. Second, the fitting that failed properly to function, the hook and wedge, is commonly used to secure the exposed doors of a vessel fitted out for sea. A ship is not secure for sea, and hence is unseaworthy, when the fitting under scrutiny does not perform its intended function in weather which can be reasonably anticipated. See Walker v. Harris, 335 F.2d 185, 191 (5 Cir.), cert. denied, 379 U.S. 930, 85 S.Ct. 326, 13 L.Ed.2d 342 (1964).

The defendant has not disputed the fact that the plaintiff did not touch the door or the hook and wedge on his hurried way into the wheelhouse. Cf. Ezekiel v. Volusia S.S. Co., 297 F.2d 215 (2 Cir. 1961). Nothing more need be shown except that the device in question failed under conditions when it should have functioned properly. On the issue of the ship's unseaworthiness it is of no moment to speculate as to why the hook and wedge, fittings intended to keep the sliding door open, failed to function. Gibbs v. Kiesel, 382 F.2d 917 (5 Cir. 1967); Van Carpals v. The S.S. American Harvester, *supra*; Vega v. The Malula, 291 F.2d 415 (5 Cir. 1961).

Despite our unanimous belief that on the facts before the court below, and before us on the record made below, the *Export Buyer* was unseaworthy, we are, nevertheless remanding the case for a new trial with reference to this occurrence, the trial to be limited, however, to the issue of the ship's unseaworthiness.[2]

■■ At this juncture we would normally direct the court below to enter judgment in appellant's favor on the issue of appellee's liability and remand for a hearing solely on damages, but we are prevented from doing so because the plaintiff did not move for a directed verdict pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Plaintiff's motion to set aside the verdict does not remedy that failure for Rule 50(b) instructs that "a party *who has moved for a directed verdict* may move to have the verdict * * * set aside and to have judgment entered *in accordance with his motion for a directed verdict * * *.*" (Emphasis supplied.) The rule is firmly entrenched that only parties who have moved for a directed verdict may seek the benefit of a judgment n. o. v. As Professor Moore has stated:

This is to avoid making a trap of the latter motion. At the time that a motion for directed verdict is permitted, it remains possible for the party against whom the motion is directed to cure the defects in proof that might otherwise preclude him from taking the case to the jury. A motion for judgment n. o. v., without prior notice of alleged deficiencies of proof, comes too late for the possibility of cure except by way of a complete new trial. The requirement of the motion

2. Needless to say, at the new trial the extent of appellant's damages will also be before the court.

for directed verdict is thus in keeping with the spirit of the rules to avoid tactical victories at the expense of substantive interests. 5 Moore, Federal Practice ¶ 50.08 at 2359.

It might appear from language in cases of this Circuit that, viewing his post-verdict motion as made pursuant to Rule 59(a) (1) of the Federal Rules of Civil Procedure, we are even prevented from granting appellant a new trial. See, e. g., Nielsen v. Charles Kurz & Co., Inc., 295 F.2d 692 (2 Cir.), cert. denied, 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962) (verdict cannot be attacked on appeal when plaintiff failed to make a motion for a directed verdict); Contorno v. Flota Mercante Grancolombiana, S.A., 278 F.2d 719 (2 Cir. 1960) (an order denying a motion for a new trial because the verdict was contrary to the weight of the evidence is not appealable absent a motion for a directed verdict). Lest too much be read into these cases, however, earlier opinions from which their authority derived indicate that an appellate court may review and reverse and remand for a new trial if the refusal to grant a motion for a new trial is "a plain abuse of discretion." United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 247, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); see Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 480–485, 53 S.Ct. 252, 77 L.Ed. 439 (1933); Itzkall v. Carlson, 151 F.2d 647 (2 Cir. 1945). In our view, the evidence of unseaworthiness being undisputed, the district court should have granted the motion.

We are of the opinion that where the undisputed evidence results in a verdict that is totally without legal support justice requires a new trial despite counsel's failure to move for a directed verdict prior to submission of the case to the jury. Cf. Johnson v. New York, N. H. & H. R. R. Co., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952). To rule that an unintended flaw in procedure bars a deserving litigant from any relief is an unwarranted triumph of form over substance, the kind of triumph which, commonplace enough prior to our more enlightened days, we strive now to avoid whenever possible. The purpose of decisions that refuse to grant relief to those who make procedural mistakes is to deter their commission in future cases and thereby promote the orderly administration of justice. Our decision today does not undermine that objective, for had counsel first moved for a directed verdict and then moved for a verdict n. o. v., he would be entitled to an entry of judgment in his favor. This relief is denied him, but we consider it fair to remand for a new trial on the merits. Perhaps at the new trial the defendant may offer sufficient evidence, if available, to raise factual questions that would justify a decision in its favor.

Judgment reversed and the case remanded for a new trial.