Charles J. PETERS and Estelle Peters,
Plaintiffs Below, Appellants,

v.

Albert GELB and Harold S. Rafal,
Defendants Below, Appellees.

Supreme Court of Delaware.

Dec. 14, 1973.

Petition for Reargument Denied
Jan. 14, 1974.

C. Waggaman Berl, Jr., of Booker, Green, Shaffer, Berl & Wise, Wilmington, for plaintiffs below, appellants.

Rodney M. Layton and Jane R. Roth, of Richards, Layton & Finger, Wilmington, for defendants below, appellees.

CAREY and DUFFY, JJ., and QUILLEN, Chancellor, sitting.

CAREY, Justice:

Appellants, Charles J. Peters and Estelle Peters, brought an action in Superior Court against Albert Gelb and Harold S. Rafal, appellees, alleging medical malpractice. Appellants claimed that the appellees negligently performed a vasectomy on Mr. Peters. The operation, designed to prevent conception of offspring, was performed on June 12, 1970. Mrs. Peters subsequently discovered that she had become pregnant, and that fact was confirmed on August 31, 1970. Appellants thereafter filed this malpractice suit.

Charles Peters underwent three sperm counts. Appellees testified that the one conducted approximately one month after the operation showed that no sperm were present in the sample. Appellees notified appellants of this fact and advised them that they could resume normal sexual relations without the use of contraceptive devices. A second count was performed on the appellant in November of 1970, and the result showed a low count; about twenty million per cubic centimeter (there was testimony at trial to the effect that the lower limit for fertility is fifty million per cubic centimeter). In April, 1971, another doctor performed a second vasectomy on Mr. Peters. The sperm count performed at that time indicated that there were too few sperm to justify a specific count.

At the trial, the plaintiffs called as their expert witness Dr. Robert S. Shaw. Appellees' counsel objected to his testifying on the basis that Dr. Shaw had no current skill in the area about which he proposed to testify, but the trial Court overruled this objection. The jury returned verdicts for the appellants totaling Five Thousand Dollars.

The appellees filed a timely motion for a judgment notwithstanding the verdict or for a new trial,[1] stating therein their reasons: ". . . because there was no evidence of negligence on the part of the defendants and because plaintiffs' expert witness lacked the qualifications of an expert to testify on the surgical procedure of vasectomies."

On March 1, 1973, the lower Court issued its opinion, Del.Super., 303 A.2d 685, denying the motion for judgment n. o. v., but granting a new trial because, said the Court, Dr. Shaw lacked sufficient recent expertise to qualify as an expert witness, and therefore his testimony should not have been admitted. This appeal is from that decision granting a new trial, with the appellants contending: (1) the Court's action in striking Dr. Shaw's testimony and awarding a new trial was an abuse of discretion; and (2) the defendants' motion for a new trial was not properly before the Superior Court because it had not been preceded by a motion for a directed verdict.

I

Dr. Shaw's testimony tended to indicate a belief that, because some sperm had reappeared after the operation, at least one vas deferens had not been ligated during the operation. Rather, he concluded, a piece of thrombosed vein had probably been removed instead of a segment of the vas,[2] and this was the cause of Mrs. Peters' pregnancy. He also offered his opinion that the laboratory results, which were favorable to the defendants, were probably inaccurate.

The defendants advanced the argument that Mrs. Peters' pregnancy was probably

---

1. The *caption* of the motion states that it is a motion for judgment n. o. v. or for new trial, but the latter request was not repeated in the *body* of the motion. Clearly, appellants' counsel was thus put on notice of the application for new trial, and appellees should not be penalized for the oversight of their counsel in failing to repeat those words of the caption.

2. This suggestion was later denied by a qualified pathologist who, during an over-night recess, reexamined the slides of the specimens taken from Mr. Peters and insisted that both were vas deferens.

caused by a phenomenon known as recanalization. The defendants relied in part upon a relatively recent article in the *American Medical Association Journal,* which verified the fact that in a small percentage of vasectomies the two ends of the vas somehow become rejoined, permitting the sperm to enter the ejaculatory system even though the vasectomy had been performed properly. Dr. Shaw gave his opinion that recanalization probably had not occurred in this case. He testified that he had read the article discussing recanalization on the morning of the trial.

In determining whether the trial Judge erred in striking Dr. Shaw's testimony, we must of course carefully review not only the nature of his testimony, but also his qualifications to testify as an expert.

Dr. Shaw graduated from medical school in 1945. That year, he began a surgical residency at the Massachusetts General Hospital, but was called to military duty as a flight surgeon. After fulfilling his military obligation, he returned in 1948 to Massachusetts General Hospital, where he remained a member of the staff of the Department of Surgery until taking an eighteen-month leave of absence in 1965 and 1966. He was an associate professor of surgery at the Harvard Medical School until 1970, with time off in 1965 and 1966 for post-graduate training in rehabilitation. Following the advice of his physician, Dr. Shaw terminated his active surgical practice in 1960. He left the staff of Massachusetts General Hospital in 1967 to work in a project providing medical services to the underprivileged in Cambridge. That project proved unsuccessful, and he moved to New Hampshire, completing the move in 1970. Although he is still retained on the consulting staff of Cambridge Hospital, Dr. Shaw performed his last major operation in 1967.

We now consider Dr. Shaw's experience with vasectomies. He did perform some vasectomies in his early days with Massachusetts General Hospital, but his testimo-

ny discloses that during the past fifteen to twenty years, he has referred such cases to specialists in urology; he last assisted in a vasectomy in 1964.

The Superior Court ruled that Dr. Shaw should not be permitted to apply deductive reasoning as to causation of an injury when he lacked sufficient "current expertise" upon which to found his conclusion. Here, the doctor had not himself performed the operation in question for some fifteen to twenty years, and the lower Court held that he was not qualified to testify as an expert in this specialized field of medicine which had undergone recent material developments. The lower Court ruled that "[a] professional is entitled to be judged according to the state of the art appropriate to the litigation." We agree. We are not unaware that plaintiffs in medical malpractice cases experience some difficulty in securing experts to testify in their behalf. However, one who is not possessed of some current expertise in a developing art, either through study of texts or medical journals or through practical experience, cannot be said to be a qualified expert. Lest this holding be read too broadly, we emphasize that each case must be carefully judged by its particular facts and circumstances. Compare Wilmington Medical Center v. Redden, Del.Supr., 312 A.2d 625 (1973). The competency of an expert witness "is in every case a relative one, i. e., relative to the topic about which the person is asked to make his statement." 2 Wigmore on Evidence, § 555, p. 634 (3d Ed. 1940).

The sole question upon review of an Order granting a new trial is whether that decision constituted an abuse of discretion. Chavin v. Cope, Del.Supr., 243 A.2d 694 (1968). The test is whether the lower Court's decision "exceeded the bounds of reason in view of the circumstances." 5.97752 Acres of Land in New Castle County v. State, Del.Supr., 202 A.2d 924 at 926 (1964). We cannot say that, given the facts and circumstances of this case, the trial Judge abused his discretion

in determining that Dr. Shaw was not competent to testify and in granting a new trial.

Appellants argue that any possible lack of "current expertise" should properly go to the weight to be given to Dr. Shaw's testimony, not to its admissibility. While that is the course suggested by some authorities, we hold that the lower Court did not abuse its discretion in concluding that Dr. Shaw's lack of recent familiarity with the matter about which he sought to testify indicated that he was not a competent expert. Therefore, it was proper to strike his testimony. DiFilippo v. Preston, Del. Supr., 3 Storey 539, 173 A.2d 333 (1961).

## II

Appellants also argue that the lower Court erred in granting the appellees' motion for a new trial because that motion had not been preceded by a motion for a directed verdict.[3] Superior Court Civil Rule 50(b) clearly provides that a motion for a directed verdict is a prerequisite to a motion for judgment notwithstanding the verdict, and that rule of procedure is well established. But appellants contend that a motion for a directed verdict is also a prerequisite to a motion for a new trial when the latter motion is joined with a motion for judgment notwithstanding the verdict.

The trial Court acknowledged that it could not grant defendants' motion for judgment notwithstanding the verdict, for in this case the defendants had withdrawn their motion for a directed verdict. Nev-

ertheless, the trial Judge did grant a new trial. He properly concluded that without the testimony of Dr. Shaw, the record did not support the verdict.

 Obviously, a motion for judgment notwithstanding the verdict and a motion for a new trial serve entirely different purposes, and the two cannot be considered interchangeable. McCloskey v. McKelvey, Del.Super., 4 Storey 107, 174 A.2d 691 (1961). Appellants had, pursuant to Rule 50(b), joined with their motion for judgment n. o. v. a motion for a new trial. While a very strict reading of Rule 50(b) may support appellants' position, we believe that such a construction would result in the unjustified triumph of form over substance. As the Court said in Oliveras v. American Export Isbrandtsen Lines, Inc., 431 F.2d 814 (2 Cir. 1970), at page 817:

> "We are of the opinion that where the undisputed evidence results in a verdict that is totally without legal support justice requires a new trial despite counsel's failure to move for a directed verdict prior to submission of the case to the jury."

 Although the appellants seek to distinguish *Oliveras*, the interests of justice transcend the minor differences between *Oliveras* and the instant case. When a party asks for a new trial under Rule 50(b), the motion is tested by the same standards which would apply if the motion had been made independently under Rule 59. 9 Wright and Miller, Federal Practice and Procedure: Civil § 2539

3. Superior Court Civil Rule 50(b) provides:
 "(b) Motion for Judgment Notwithstanding the Verdict. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed ver-

dict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgments as if the requested verdict had been directed or may order a new trial."

(1971). There is no special reason why a motion for a new trial must be preceded by a motion for a directed verdict when joined with a motion for judgment n. o. v. while there exists no such prerequisite to an independent motion for a new trial.

Therefore, the decision below is affirmed and the case remanded for a new trial.