**POSADAS de MEXICO, S.A. de C.V., Plaintiff,**

v.

**Gerald D. DUKES and Terence W. Rufer, Defendants.**

**No. 89 Civ. 7527 (WCC).**

United States District Court, S.D. New York.

March 13, 1992.

As Amended March 16, 1992.

---

122

Fennell & Minkoff, New York City, for plaintiff; Darrell K. Fennell, Ben Rosenberg, of counsel.

Sheldon H. Kronegold, Fort Lee, N.J., for defendant Terence W. Rufer.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Defendant Terence W. Rufer ("Rufer") moves for judgment notwithstanding the verdict entered in this action on October 28, 1991 following a three-day jury trial.

Plaintiff Posadas de Mexico, S.A. de C.V. ("Posadas"), which owns and operates hotels in Mexico, brought the action against Terence W. Rufer Associates, Inc. ("Rufer Associates"), a New York corporation which acted as its booking agent, and against Rufer, its president and sole stockholder, and Gerald D. Dukes ("Dukes") its manager, charging fraud and conversion of checks received by Rufer Associates as deposits against such reservations. Rufer claims a setoff for commissions allegedly due to Rufer Associates from Posadas.

## BACKGROUND

The following facts were established at the trial or are undisputed: The contract between Posadas and Rufer Associates provided (1) that the reservation checks were to be deposited in an account in a New York bank to which Posadas had sole signatory authority; (2) that Rufer Associates would be paid a 10% commission on the reservations actually used; and (3) that Posadas would advance sufficient money to pay the operating expenses of Rufer Associates including the salaries of Rufer and Dukes.

The contract expired by its terms on October 31, 1986 and Posadas gave Rufer Associates timely advance notice that it would not be renewed. Negotiations for its renewal continued after October 31, 1986, but were formally terminated by a letter from Posadas to Rufer Associates dated November 13, 1986 which expressly terminated all authority of Rufer Associates as agent of Posadas.

After October 31, 1986, Rufer Associates continued to receive deposit checks on reservations it had made prior to that date. Because Rufer Associates was concerned about collecting commissions it believed were due to it, it consulted its attorney, Edwin A. Howe, who advised it not to deposit these checks in the bank account of Posadas but in an escrow account to which it had the sole signatory authority. Rufer Associates accordingly opened in a different bank an account entitled "Terence W. Rufer Associates, as agent for Posadas de Mexico" and deposited into it Posadas reservation checks totalling $224,122.31. During the ensuing months, this entire amount was withdrawn and used to finance the continuing operations of Rufer Associates.

Rufer Associates, having lost its only major client, soon failed and filed for bankruptcy protection under Chapter 11, this proceeding ultimately being converted to a liquidation. Posadas filed a claim in the bankruptcy court stating that its records had been destroyed by an earthquake, but submitting a statement of account prepared by Rufer Associates showing, *inter alia*, that Posadas owed Rufer Associates $303,597.84 in commissions.

## PROCEEDINGS

At the trial, after all the evidence had been presented, defendant Rufer moved under Rule 50(b), Fed.R.Civ.P., for a directed verdict dismissing the claim of fraud. The Court granted this motion, stating, "I am inclined not to charge the jury on the issue of fraud ... I don't think the essential concept of fraud [willful misrepresentation or concealment and detrimental reliance thereon] is satisfied here. If it is, it is satisfied in every case [of] embezzlement.... I think [this] is a pure case of conversion and not a case of fraud."

The jury, in response to special interrogatories, found: (1) that Rufer had personally converted $224,122.31 of funds belonging to Posadas; (2) that the evidence did not establish that Rufer Associates was owed any commissions by Posadas; and (3) that Posadas was entitled to punitive damages against Rufer in the amount of $75,-000. Judgment was entered on this verdict on November 13, 1991.

On November 21, 1991 Rufer filed the present motion "for a judgment notwithstanding the verdict pursuant to Rule 50." However, as Posadas correctly pointed out after receiving the transcript of the relevant part of the trial proceedings, Rufer had not moved at the close of the evidence for a directed verdict on the conversion claim, as required by Rule 50(b).[1] Thereupon, Rufer asked that his motion be deemed as one for relief from the judgment pursuant to Rule 60(b)(6), Fed.R.Civ.P.

Apparently concerned that his motion might not be effective to stay the running of his time to appeal from the judgment, on December 12, 1991 Rufer filed a Notice of Appeal to the Court of Appeals for the

---

1. Indeed, in making the motion for directed verdict, Rufer's attorney expressly limited it to the fraud issue:

    MR. KRONEGOLD: I would like to make a motion pursuant to Rule 50(b) for a directed verdict as plaintiff has not proven his case nor has he proved any elements of fraud regarding the case against Mr. Rufer.
    THE COURT: You are only talking about the fraud?
    MR. KRONEGOLD: Yes, I'm talking about the fraud issue, your Honor.

Second Circuit. That notice would clearly oust this Court of jurisdiction but for the pendency of the present motion. Rule 4(a)(4), Fed.R.App.P., provides that a notice of appeal filed before the disposition of a motion for judgment under Rule 50(b) or a motion for a new trial under Rule 59, among others, "shall have no effect."

■ As previously mentioned, Rule 50(b) can furnish no basis for the pending motion because of Rufer's failure to move for directed verdict on the conversion claim. Moreover, a motion for relief from the judgment pursuant to Rule 60(b) would not extend the time for appeal nor prevent the notice of appeal from depriving this Court of jurisdiction to rule on the motion. However, if the motion is deemed as one seeking a new trial pursuant to Rule 59, Fed. R.Civ.P., it will nullify the filing of the notice of appeal, and this Court will so deem it.[2]

This accords with the treatment approved by the Court of Appeals for the Second Circuit in *Baskin v. Hawley*, 807 F.2d 1120, 1134 (2d Cir.1986):

the very purpose of Rule 50(b)'s requiring a prior motion for a directed verdict is to give the other party "an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury." 5A *Moore's Federal Practice* ¶ 50.08, at 50–77 (2d ed. 1986). Thus, if the party moving for judgment n.o.v. has not moved for a directed verdict, and if the court is nevertheless satisfied that justice requires that the judgment be vacated for insufficiency of the evidence, the court should normally grant a new trial. *See Russo v. State of New York*, 672 F.2d 1014, 1021–22 (2d Cir.1982); *Sojak v. Hudson Waterways Corp.*, 590 F.2d 53, 54–55 (2d Cir.1978); *Oliveras v. American Export Isbrandtsen Lines, Inc.*, 431 F.2d 814, 816–17 (2d Cir.1970).

## DISCUSSION

### Applicable legal standard

In *Song v. Ives Laboratories*, Docket No. 91–7621 957 F.2d 1041 (2d Cir. February 25, 1992), the Court of Appeals for the Second Circuit recently restated the standard applicable to motions for a new trial:

A motion for a new trial should be granted when, in the opinion of the district court, "the jury has reached a seriously erroneous result or … the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir.1988); *see also Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 132 (2d Cir.1986); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir. 1983); *Bevevino v. Saydjari*, 574 F.2d 676, 684–85 (2d Cir.1978). Unlike a judgment n.o.v., a new trial may be granted even if there is substantial evidence to support the jury's verdict. *See Bevevino*, 574 F.2d at 683. In contrast to the standard applied in considering a motion for judgment n.o.v., a trial judge hearing a motion for a new trial "is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." *Id.* at 684. Consequently, we will reverse a district court's decision to grant or deny a motion for a new trial only for an abuse of discretion. *See, e.g., Smith v. Lightning Bolt Productions*, 861 F.2d at 370; *Saloomey v. Jeppesen & Co.*, 707 F.2d 671, 679 (2d Cir.1983); *Bevevino*, 574 F.2d at 683–84.

### Conversion claim

■ The trial evidence amply supported the jury's finding that Rufer had personally converted $224,122.31 in funds of Posadas. Rufer urges that the reservation checks were deposited in an account opened by Dukes and the funds were withdrawn and expended by Dukes without his knowledge or consent. The Court finds that contention implausible, as the jury did. Rufer was the president and sole shareholder of Rufer Associates. It is inconceivable that he did not know about and condone such disposition of the funds of Posadas. After all, the funds were used to pay his salary as well as the other expenses of

---

**2.** Rufer's counsel is cautioned that a new notice of appeal will have to be filed within 30 days after the date of entry of this Opinion and Order. See Rule 4(a)(4), Fed.R.App.P.

Rufer Associates in the months after October 31, 1986 and he must have known that there were no other funds available to cover these expenses. The Court therefore will deny Rufer's motion insofar as it seeks a new trial on the conversion issue.

### Offset for Commissions Owed by Posadas

■ The jury's finding that Rufer had not carried his burden of establishing that Posadas owed commissions to Rufer Associates presents a much more troublesome problem.

As previously mentioned, the claim which Posadas filed in the Rufer Associates bankruptcy proceeding included a statement of account prepared by Rufer Associates showing that Posadas owed Rufer Associates $303,597.84 in commissions. The only obvious basis on which the jury could have failed to find that such an amount of commissions was owed was that the commissions were owed to Rufer Associates and not to Rufer personally. But the special interrogatory was worded with the precise objective of eliminating any such confusion. It asked:

Has defendant Terence W. Rufer proved by a preponderance of the evidence that *Terence W. Rufer Associates* is owed commissions on hotel bookings made by it at hotels operated by plaintiff Posadas de Mexico? (Emphasis added).

In a robing room conference just before the summations of counsel, the Court told the attorneys that it was submitting this question to the jury so that, if the jury found that commissions were owed to Rufer Associates, the Court would be able to rule on the question of equitable offset, that is, whether Posadas should be able to recover from Rufer the money which was converted for the benefit of Rufer Associates without any deduction of the money which it owed Rufer Associates. Because Rufer Associates had received a discharge in bankruptcy without satisfaction of the claim of Posadas for conversion of its funds, Posadas was pursuing Rufer personally. Although the claim against Posadas for commissions was an asset of Rufer Associates and not of Rufer personally, if Rufer were held personally liable for conversion of the funds of Posadas and was

not allowed an offset for the commissions owed by Posadas to Rufer Associates, Posadas might end up getting much more money than it could have gotten if there had been no conversion of its funds and if it had paid the commissions owed. Indeed, it appears possible that Posadas would have owed Rufer Associates the difference of $79,475.53 between the commissions owed ($303,597.84) and the amount converted ($224,122.31).

In an attempt to prove that Rufer was entitled to such an offset, Rufer's attorney showed to the Court at the robing room conference, but did not place in evidence, a letter from Isaac Musotov, the trustee in the Rufer Associates bankruptcy, stating that the trustee had "abandoned" the claim for commissions which Rufer Associates had against Posadas. Rufer implied that, as the sole shareholder in Rufer Associates, a now defunct corporation, he is the owner of any assets which the bankruptcy trustee did not see fit to pursue for the benefit of creditors.

The Court then suggested that if the corporation has a viable claim against Posadas for commissions, it should have been pursued and any recovery thereon included among the assets distributed to creditors. In his memorandum in support of the motion, Rufer states that in the bankruptcy liquidation, the creditors got all but $37,017.89 of the amounts owed them by Rufer Associates and that the bankruptcy can be reopened pursuant to 11 U.S.C. § 350, so that this additional amount could be distributed to the creditors to satisfy in full all their claims. If this is true, it would apparently leave Rufer entitled to any remainder, which could be as much as $42,457.64. But there is no evidence in the present record from which this could be determined.

There are several other unsettled questions. Posadas claims that Rufer Associates owed it unspecified sums, apparently because during the term of the contract it had advanced money to cover the operating expenses of Rufer Associates, substantially in excess of the commissions due to Rufer Associates, although the records of Posadas reflecting these advances were reportedly lost in an earthquake. Posadas claims

further that it continued to make such advances to Rufer Associates even after the contract was terminated.

Apparently such a claim was filed by Posadas in the bankruptcy proceeding and was either rejected for lack of proper proof or was discharged by proportionate distribution of the available assets. Again the record does not supply the answer.

The Court is thus left with serious doubts about the fairness of the jury's verdict on the counterclaim for commissions. The undisputed evidence, indeed the evidence submitted by Posadas itself in its claim in bankruptcy, shows that it owed substantial commissions to Rufer Associates. The record does not show whether these unpaid commissions were exceeded by amounts which Rufer Associates owed to Posadas, or whether any part of the claim of Posadas survived the bankruptcy proceeding. If the evidence in the trial record does not furnish the answers to such questions, it clearly does not support the jury's verdict that no commissions were owed to Rufer Associates.

It is true that, even supplementing the trial record with the representations subsequently made in the motion papers, the competent evidence available to the Court does not permit it to determine whether Rufer would be entitled to a setoff—that is, whether the addition to the bankruptcy estate of the net amounts owed to Rufer Associates by Posadas would leave Rufer Associates, after full satisfaction of all the creditors' claims, with residual assets which would be available to Rufer, its sole shareholder.

Nevertheless the Court concludes that justice demands that a new trial be granted on the issues whether commissions were owed by Posadas to Rufer Associates and, if so, the net amount owed.

It may well be that the evidence at a new trial will show that no net amount was due to Rufer Associates because the amount of the commissions owed to it was exceeded by the amount owed to Posadas by Rufer Associates. It may also turn out that Rufer is not entitled to an equitable setoff because all the moneys collected from Posadas would have to be used to satisfy the residual claims of the creditors of Rufer Associates. But justice will be ill-served if the Court is denied access to all the facts relevant to the claim for setoff.

*Punitive Damages*

Rufer attacks the jury's verdict awarding punitive damages against him by contending that he acted on the advice of counsel and not with the malice and reckless disregard of the rights of Posadas which are required for such an award.

Posadas responds by pointing out that the opinion letter from the attorney approved the deposit of the reservation checks in an "escrow account," with the obvious objective of insuring their availability if and when it is determined that Rufer Associates was entitled to them.

Instead of waiting for such determination, Dukes withdrew the funds from the account, either at Rufer's direction or with his undoubted knowledge and approval, to pay the operating expenses of Rufer's wholly-owned corporation, including Rufer's salary.

The jury was instructed that it could award punitive damages only "if you find that Terence W. Rufer, the individual, acted maliciously and with reckless disregard of the rights of Posadas in the property" and that "[p]unitive damages are awarded for the purpose of punishing someone whose conduct has been unusually blameworthy or egregious in order to create an example which will deter others from engaging in such conduct in the future." There was no exception to this change.

There was ample evidence from which a reasonable jury could have determined that, under this standard, an award of punitive damages was called for. For example:

—On November 14, 1986, Rufer signed a signature card opening the account in the name of Rufer Associates "as agents for Posadas de Mexico," despite the fact that the agency relationship had been terminated two weeks earlier.

—Rufer submitted to the bank a purported resolution of the board of directors of Rufer Associates which falsely stated that the opening of the account had been approved at a board meeting a week earlier

and incorrectly identified Gerald Yurn as secretary of the corporation. In fact, there was no such meeting of the board, although the one other director, Edwin Howe, had approved the opening of an escrow account.

The Court therefore concludes that the jury's award of punitive damages should not be set aside.

## CONCLUSION

Rufer's motion is denied insofar as it seeks a new trial with respect to the jury's verdict on the conversion claim and on the claim for punitive damages. The motion is granted to the extent of ordering a new trial on the issues of whether Posadas owed commissions to Rufer Associates and, if so, the net amount owed. The parties are directed to appear at a pre-trial conference in the Court's chambers, Room 1902 at 9:30 a.m. on Friday, March 27, 1992 to schedule further proceedings in the action.

SO ORDERED.